APR 14 2025 PM1
FILED - USDC - FLMD - JAX

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

PLAINTIFFS

**1. JED LINEBERRY**
Address: 4150 Belfort Road
         PO Box 550956
         Jacksonville, Florida 32216
Phone:   (501)-326-5095

**2. TWILA SMEDLEY**
Address: 4150 Belfort Road
         PO Box 550956
         Jacksonville, Florida 32216
Phone:   (501)-326-5095

v.

DEFENDANTS

**1. CITY OF ST. AUGUSTINE, FLORIDA**
Address:  75 King Street
          St. Augustine, FL 32084
Phone:    (904)-825-1052

**2. ST. JOHNS COUNTY**
  **SHERIFF'S DEPARTMENT**
Address: 4015 Lewis Speedway
         St. Augustine, Florida 32084
Phone:   (904)-824-8304

**3. Officer ANDREW D. HITCH;**
Address: 4015 Lewis Speedway
         St. Augustine, Florida 32084
Phone:   (904)-824-8304

**4. Officer TAYLOR LAYN PARKER**
Address: 4015 Lewis Speedway

Case Number: 3:25-cv-347-MMH-PDB
        **Jury Trial is demanded.**

Judge: _____

1.

St. Augustine, Florida 32084 )
Phone:    (904)-824-8304 )
)
**5. Officer V. THOMPSON** )
Address: 4015 Lewis Speedway )
St. Augustine, Florida 32084 )
Phone:    (904)-824-8304 )
)
**6. Officer ANNA A. ZUREK** )
Address: 4015 Lewis Speedway )
St. Augustine, Florida 32084 )
Phone:    (904)-824-8304 )
)
**7.  Officer E. MARTIN** )
Address: 4015 Lewis Speedway )
St. Augustine, Florida 32084 )
Phone:    (904)-824-8304 )
)
**8. Officer EDWARD A. SCOGGINS** )
Address: 4015 Lewis Speedway )
St. Augustine, Florida 32084 )
Phone:    (904)-824-8304 )
)
**9. Officer A. NORCROSS** )
Address: 4015 Lewis Speedway )
St. Augustine, Florida 32084 )
Phone:    (904)-824-8304 )
)
**10. WALMART INC. f/k/a** )
    **WAL-MART STORES, INC.** )
Address: 845 Durbin Pavilion Drive )
St. Johns, Florida 32259 )
Phone:   (904)-417-9670 )
and )
    **WALMART INC. CORPORATE** )
Address:    702 SW 8th Street )
Bentonville, AR 72716 )
Phone:      (800)-925-6278 )
)
**11. KYLE MICHAEL FROEDER** )

2.

Address: 845 Durbin Pavilion Drive    )
          St. Johns, Florida 32259    )
Phone:    (904)-417-9670    )
                                     )

**12. JOHN DOE : "THE NEW GUY"**    )
Address: 845 Durbin Pavilion Drive    )
          St. Johns, Florida 32259    )
Phone:    (904)-417-9670    )
Statement: John Doe, "The New Guy" is a Walmart, Inc. Employee who has refused to produce his identity. Walmart Inc. also refused to provide his identity.

**NOTICE:** *Jury Trial Demanded under Fed. R. Civ. P. 38(b)*

**Page Limits:** Plaintiffs' case involves 12 Defendants: large corporations, a Sheriff's Department, seven police officers, and two private citizens; Several Causes of Action.The Pages within this Complaint are necessary to ensure that all Defendants are provided sufficient notice:

While the Supreme Court has page limits for petitions, there is [n]ot a specific page limit for civil complaints filed in Federal Court. The focus is on ensuring the document is properly signed and includes the necessary information.

<u>**Introduction**</u>  ·

**1**. The following causes of action arose out of a series of events that violated

Jed Lineberry's and Twila Smedley's Constitutional Rights, occurring on

February/10/2024 due to the Negligence of the Hiring, Supervision, and

Retention of Employees by Defendant 1, City of St. Augustine, Florida;

Defendant 2, St. Johns County Sheriff's Department; and Defendant 10,

Walmart Inc.: Fourth Amendment Violation Unconstitutional Stop; Fourth

Amendment Violation Unconstitutional Search; Fourth Amendment Violation

Unconstitutional Arrest; Fourth Amendment Violation Excessive Force; Fourth

Amendment Violation Strip Search and Sexual Assault by Police Officers

occurring at approximately 8:00 p.m. located at 845 Durbin Pavilion Drive St.

Johns, Florida 32259.

**2.** The following causes of action are for compensatory, special, punitive

damages, and punitive damages together with costs and disbursements,

including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.S.C. § 1983*

and prejudgment interest to be determined by a Jury, to redress the deprivation

under color of Federal and State law for the Constitutional violations of Jed

Lineberry's and Twila Smedley's clearly established rights as secured by the

Fourth and Fourteenth Amendments to the United States Constitution, against

all Defendants listed above in their respective capacities as duly certified law

enforcement officers and Individual Capacities. Defendants 3, 4, 5, 6, 7, 8, and

9, are employed by Defendants, 1, City of St. Augustine, Florida and Defendant

2, St. Johns County Sheriff's Department. Defendants 11 and 12 are employed

by Defendant 10, Walmart Inc. Collectively, all government entities, officers,

private businesses, and citizens for their respective violations of Jed Lineberry's

and Twila Smedley's constitutional right to be free from Unconstitutional Stop,

Unconstitutional Search, Unconstitutional Arrest, Unconstitutional Excessive

Force, Unconstitutional Strip Search, and Unconstitutional Sexual Assault in

conjunction for their unconstitutional policies, customs and/or practices under

4.

Monell and its progeny. Plaintiffs allege that it was an official policy or custom of the municipalities that was the "moving force" behind the alleged constitutional deprivation. In addition, Defendant 1, City of St Augustine, Florida's and Defendant 2, St. Johns County Sheriff's Department's failure to provide proper training for its employees represent a policy for which [the municipalities] are being held liable, due to the actual causes of injury. Defendant 1, The City of St. Augustine, Florida; Defendant 2, St. Johns County Sheriff's Department; and Defendant 10, Walmart Inc. frequently fail to terminate or discipline officers/employees who demonstrate patterns of misconduct. Defendant 10, Walmart Inc. is a public trading company and a private business. Defendants 11 and 12 are employed by Defendant 10, collaborating closely with the State of Florida, St. Johns County Sheriff's Department and/or performing a public function at the time the incident occurred given rise to this Complaint. Defendant 1, Defendant 2, and Defendant 10 had knowledge of their employees' unfitness for the job. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

## Descriptions and Service Information For All Defendants

**Defendant 1:  City of St. Augustine, Florida**
**Service:**    Isabelle C. Lopez: City Attorney for City of St. Augustine, Florida
**Address:**    75 King Street
           St. Augustine, FL 32084
**Phone:**     (904)-825-1052
Statement: Defendant City of St. Augustine, Florida (hereinafter Defendant City

5.

of St. Augustine or Defendant 1) was negligent in the hiring, supervision, and retention of its personnel. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint. Defendant 1 had knowledge of its employees' unfitness for the job.

## Defendant 2: St. Johns County Sheriff's Department
**Service:** Sheriff Robert A. Hardwick c/o St. Johns County Sheriff's Department
Address:    4015 Lewis Speedway
            St. Augustine, Florida 32084
Phone:      (904)-824-8304
Employer: St. Johns County Sheriff's Department
Statement: Defendant St. Johns County Sheriff's Department (hereinafter Defendant St. Johns County Sheriff's Department or St. Johns Sheriff's Department or Defendant 2) was negligent in the hiring, supervision, and retention of its personnel. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint. Defendant 2 had knowledge of its employees' unfitness for the job.

## Defendant 3: Officer Andrew D. Hitch
**Service:**  Sheriff Robert A. Hardwick c/o Officer Andrew D. Hitch
Address:    4015 Lewis Speedway
            St. Augustine, Florida 32084
Phone:      (904)-824-8304
Employer: St. Johns County Sheriff's Department
Defendant's Title: "LE Deputy: 10733"
Defendant's Org/Unit: "SJSO\LENF\PATROL\BRAVO\NORTH\NW"
Statement: Defendant Officer Andrew D. Hitch (hereinafter Defendant 3 or Hitch) is sued in his official and individual capacity. Defendant 3 was acting under color of law. Defendant 3 was on official duty at the time the incident occurred given rise to this Complaint. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

## Defendant 4: Officer Taylor Layn Parker
**Service:** Sheriff Robert A. Hardwick c/o Officer Taylor Layn Parker
Address:    4015 Lewis Speedway
            St. Augustine, Florida 32084
Phone:       (904)-824-8304
Employer: St. Johns County Sheriff's Department
Defendant's Title: "LE Deputy, #11384"
Defendant's Org/Unit: "SJSO\LENF\PATROL\BRAVO\NORTH\NW"
Notice: Defendant Officer Taylor Layn Parker (hereinafter Defendant 4 or

6.

Parker) is sued in her official and individual capacity. Defendant 4 was acting under color of law. Defendant 4 was on official duty at the time the incident occurred given rise to this Complaint. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**Defendant 5: Officer V. Thompson**
**Service:** Sheriff Robert A. Hardwick Officer V. Thompson
Address:    4015 Lewis Speedway
                  St. Augustine, Florida 32084
Phone:       (904)-824-8304
Employer: St. Johns County Sheriff's Department
Defendant's Title: "LE Deputy"
Statement: Defendant Officer V. Thompson (hereinafter Defendant 5 or Thompson) is sued in his/her official and individual capacity. Defendant 5 was acting under color of law. Defendant 5 was on official duty at the time the incident occurred given rise to this Complaint. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**Defendant 6: Officer Anna A. Zurek**
**Service:** Sheriff Robert A. Hardwick c/o Officer Anna A. Zurek
Address: 4015 Lewis Speedway
                  St. Augustine, Florida 32084
Phone:       (904)-824-8304
Employer: St. Johns County Sheriff's Department
Defendant's Title is: "LE Deputy: 11320"
Defendant's Unit: "SJSO\LENF\PATROL\BRAVO\SOUTH\SE"
Statement: Defendant Officer Anna A. Zurek (hereinafter Defendant 6 or Zurek) is sued in her official and individual capacity. Defendant 6 was acting under color of law. Defendant 6 was on official duty at the time the incident occurred given rise to this Complaint. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**Defendant 7: Officer E. Martin**
**Service:** Sheriff Robert A. Hardwick c/o Officer E. Martin
Address:    4015 Lewis Speedway
                  St. Augustine, Florida 32084
Phone:       (904)-824-8304
Employer: St. Johns County Sheriff's Department
Defendant's Title: "LE Deputy, #K98"
Defendant's Org/Unit: "SJSO\LENF\PATROL\K-9"

Statement: Defendant Officer E. Martin (hereinafter Defendant 7 or Martin) is sued in his official and individual capacity. Defendant 7 was acting under color of law. Defendant 7 was on official duty at the time the incident occurred given rise to this Complaint. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**Defendant 8: Officer Edward A. Scoggins**
**Service:** Sheriff Robert A. Hardwick c/o Officer Edward A. Scoggins
Address:    4015 Lewis Speedway
            St. Augustine, Florida 32084
Phone:      (904)-824-8304
Employer: St. Johns County Sheriff's Department
Defendant's Title: "LE SGT: 10429"
Defendant's Org/Unit: "SJSO\LENF\PATROL\BRAVO\NORTH\NW"
Notice: Defendant Officer Edward A. Scoggins (hereinafter Defendant 8 or Scoggins) is sued in his official and individual capacity. Defendant 8 was acting under color of law. Defendant 8 was on official duty at the time the incident occurred given rise to this Complaint. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**Defendant 9:  Officer A. Norcross**
**Service:** Sheriff Robert A. Hardwick c/o Officer A. Norcross
Address:    4015 Lewis Speedway
            St. Augustine, Florida 32084
Phone:      (904)-824-8304
Employer: St. Johns County Sheriff's Department
Defendant's Title: "LE Deputy, #4556"
Notice: Defendant Officer A. Norcross (hereinafter Defendant 9 or Norcross) is sued in his official and individual capacity. Defendant 9 was acting under color of law. Defendant 9 was on official duty at the time the incident occurred given rise to this Complaint. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**Defendant 10: Walmart Inc. f/k/a WAL-MART STORES, INC.**
**Walmart Inc. Store #928**
Address: 845 Durbin Pavilion Drive
         St. Johns, Florida 32259
Phone:   (904)-417-9670

**Service: Walmart Inc. Corporate Office**

**Service: Walmart Inc. Corporate Office**
Address:    702 SW 8th Street
                  Bentonville, AR 72716
                  (800)-925-6278

Service of Process Addresses for Official Documents:

**Secretary of State**

Address:  RA., Gray Building
                  Tallahassee, Florida 32301

Statement: Defendant Walmart Inc. (hereinafter Defendant 10 or Walmart Inc. or Walmart) was negligent in the hiring, supervision, and retention of its personnel. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint. Defendant Walmart Inc. is a public trading company and a private business collaborating closely with the State of Florida, St. Johns County Sheriff's Department, and/or performing a public function at the time the incident occurred given rise to this Complaint. Defendant 10 had knowledge of its employees' unfitness for the job.

**Defendant 11: Kyle Michael Froeder**
**Service:** Walmart Management:
Address:    845 Durbin Pavilion Drive
                  St. Johns, Florida 32259
Phone:      (904)-417-9670
Employer: Walmart Inc.
Defendant's Title: "Retail Asset Protection Investigator" for Defendant 10, Walmart Inc.
Statement: Defendant Kyle Michael Froeder (hereinafter Defendant 11 or Kyle or Kyle Michael Froeder) is an employee of Defendant 10 Walmart Inc. and a Loss Prevention Investigator collaborating closely with the State of Florida, St Johns County Sheriff's Department and/or performing a public function at the time the incident occurred given rise to this Complaint. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**Defendant 12: John Doe, "The New Guy"**
**Service:** Walmart Management
Address:    845 Durbin Pavilion Drive
                  St. Johns, Florida 32259
Phone:      (904)-417-9670
Employer: Walmart Inc.
Defendant's Title: "Retail Asset Protection Investigator" for Defendant 10,

9.

Walmart Inc.

Statement: Defendant 12 (hereinafter Defendant 12 or John Doe or "The New Guy") is an employee of Defendant 10 Walmart Inc. working jointly with Defendant 11, Kyle Michael Froeder as a Loss Prevention Investigator collaborating closely with the State of Florida, St Johns County Sheriff's Department and/or performing a public function at the time the incident occurred given rise to this Complaint. Defendant 12 is an employee for Defendant 10, Walmart Inc. Defendant 10 and Defendant 12 have refused to produce Defendant 12's identity. St. Johns County Sheriff's Department also refused to provide his identity. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

### COMPLAINT FOR A CIVIL CASE PURSUANT TO *42 U.S.C Code §* *1983 – CIVIL ACTION FOR DEPRIVATION OF RIGHTS* (Non-Prisoner): <u>Canton Liability</u>

**NOTICE:** *This Civil document is 100% filed and drafted by Plaintiffs, pro se. At no time has any attorney assisted within the drafting of this civil document. Pro se pleadings are to be considered without regard to technicality; pro se litigant pleadings are not to be held to the same high standards of perfection as lawyers. Maty v. Grasselli Chemical Co., 303 U.S. 197 (1938) "Pleadings are intended to serve as a means of arriving at fair and just settlements of controversies between litigants."*

**1:** All named Defendants are being sued jointly pursuant to *Title 42 U.S.C. Code § 1983 – Civil Rights Action for Deprivation of Rights. (Non-Prisoner)*: Canton Liability. Defendants 1-12 acted "under color of law". Defendant 10 was negligent in the hiring, supervision, and retention of its personnel. All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint. Defendant 10 Walmart Inc. is a public trading company. Defendants 10, 11, and 12 are collaborating closely with the State of Florida, St. Johns County Sheriff's Department and/or performing a public function at the

10.

time the incident occurred given rise to this Complaint. Defendants' actions deprived Plaintiffs of their Constitutional Rights.

2: Plaintiffs allege that it was an official policy or custom of the private company and municipalities that was the "moving force" behind the alleged constitutional deprivation. In addition, Defendant 1, The City of St. Augustine, Florida's and Defendant 2, St. John's County Sheriff's Department's failure to provide proper training for its employees represent a policy for which [the municipalities] are being held liable, due to the actual cause of injuries. The City of St. Augustine, Florida, St. Johns County Sheriff's Department and Walmart Inc. frequently fail to terminate or discipline officers/employees who demonstrate patterns of misconduct.

## I: QUALIFIED IMMUNITY

1: The Jury will assess the unconstitutional stop, unconstitutional search, unconstitutional arrest, unconstitutional strip search, unconstitutional sexual assault, reasonableness of the force, and probable cause.

2: All Defendants violated Plaintiffs' Constitutional Rights.

3: The Constitutional Rights violated were clearly established at the time of the violations.

4: On February/10/2024 at 845 Durbin Pavilion Drive, St. Johns Florida, 32259 all Defendants, while acting within their official duty, violated Plaintiffs'

Constitutional Rights. Thereof, all Defendants, acting under color of law, deprived Plaintiffs of their Constitutional Rights. All Defendants' violations of Plaintiffs' Constitutional Rights caused physical injury, infliction of emotional distress, emotional distress, and financial damages to Plaintiffs.

5: Defendants 1, 2, and 10 by actions applied through their supervisors and/or that, through their policies or customs, contributed to unconstitutional behavior by their subordinates. Thereof, all Defendants acting in collaboration violated Plaintiffs' Constitutional Rights, which were so clearly established that a reasonable person, especially any reasonable and trained normal-acting officer, acting under color of law, would have known to be so clearly established that a reasonable officer would have known he/she had committed constitutional violations. Thereof, all Defendants are no longer protected by their qualified immunity.

Found in *Sanchez v. County of Volusia 331, So. 3Rd 854 (Fla 5th DCA 2021) 42 U.S.C. § 1983* provides, in pertinent part, that:

> "*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or communities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....*"

6: Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns

County Sheriff's Department had actual or constructive notice of its employees' unfitness.

**7:** Defendants 3, 4, 5, 6, 7, 8, and 9 are employees of Defendants 1 and 2. Defendants 3, 4, 5, 6, 7, 8, and 9's unconstitutional acts were the direct results of a failure of Defendants 1 and 2 to train and supervise. The constitutional violations were caused by a long-standing custom that, although may not be formally adopted, was regularly followed by government employees. All Defendants' unconstitutional acts were not an isolated incident but a product of a long-standing policy or systemic failure.

**8:** Defendant 10, Walmart Inc. had actual or constructive notice of its employees' unfitness.

**9:** Defendants 11 and 12 are employees of Defendant 10. Defendant 11's and 12's unconstitutional acts were the direct results of a failure of Defendant 10 to train and supervise. The constitutional violations were caused by a long-standing custom that, although may not be formally adopted, was regularly followed by Defendant 10's employees. Defendant 10 is a public trading company and a private business. Defendants 11 and 12 are private citizens under the supervision of Defendant 10. Defendants 10, 11, and 12 acted under color of law. Defendant 10 was negligent in the hiring, supervision, and retention of its personnel. All conditions precedent

13.

to file this Complaint have been performed or has occurred given rise to this Complaint. Defendant 10, Walmart Inc. is a public trading company and a private business. Defendants 11 and 12 are private citizens collaborating closely with the State of Florida, St. Johns County Sheriff's Department and/or performing a public function at the time the incident occurred given rise to this Complaint. Defendants' actions deprived Plaintiffs of their Constitutional Rights. Plaintiffs allege that it was an official policy or custom of the municipalities that was the "moving force" behind the alleged constitutional deprivation. In addition, Defendant 1, City of St. Augustine, Florida's and Defendant 2, St. Johns County Sheriff's Department's failure to provide proper training for its employees represent a policy for which [the municipalities by collaboration] are being held liable, due to the actual cause of injuries. There is evidence of a history of widespread [p]rior abuse in connection with The City of St. Augustine, Florida; St. Johns County Sheriff's Department; and Walmart Inc. Defendants 1, 2, and 10 frequently fail to terminate or discipline officers/employees who demonstrate patterns of misconduct.

## II. VENUE

14.

**28 U.S. Code § 1391 (b) Venue in General:**

**Fact 1:** All Causes of Action for this Complaint occurred in St. Johns County, Florida.

**Fact 2:** All Defendants reside within St. Johns County, Florida. U.S District Court, The Middle District of Florida retains complete venue/jurisdiction for this Complaint.

**Fact 3:** Plaintiffs Jed Lineberry and Twila Smedley reside in Jacksonville, Florida (Duval County). The U.S District Court, The Middle District of Florida has proper venue/jurisdiction for all causes of action within this Complaint.

## III. JURISDICTION

U.S District Court, The Middle District of Florida has jurisdiction over federal questions pursuant to *28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983, 1988.*

## IV. STATEMENT OF FACTS

**1:** On or about February/10/2024 Jed Lineberry and Twila Smedley (husband and wife) (hereinafter Plaintiffs, if referring to both Jed Lineberry and Twila Smedley) had recently left a private business, Walmart located at 845 Durbin Pavilion Drive St. Johns, Florida 32259.

**2:** Thereof, attempting to leave Walmart, within a few seconds, while still on private property and inside their vehicle, a police vehicle (later identified as

official police operating out of St. Johns County Sheriff's Department) turned on its patrol lights behind Plaintiffs.

**3:** Plaintiffs immediately pulled into a parking area, still located on private property. Within a few additional seconds, Plaintiffs' vehicle was surrounded by multiple police vehicles (later identified as official police vehicles operating out of St. Johns County Sheriff's Department).

**4:** Within a few more seconds of being stopped, Defendant 9, Officer A. Norcross came to the passenger's side door where Jed Lineberry was seated.

**5:** Jed Lineberry immediately rolled down the window.

**6:** Defendant 9 approached with a hostile demeanor, asking Jed Lineberry, "Do you have ID". (Notice: Defendant 9 did not state "to show or produce ID".)

**7:** Jed Lineberry responded, "Yes, why". Defendant 9 became violent, reached inside the vehicle unlocking the door, pulled open the passenger door, jerked Jed Lineberry out of the vehicle, slammed him up against the vehicle, and handcuffed him with hands behind his back. Jed Lineberry informed and asked Defendant 9 to please handcuff him in front that he was claustrophobic. Defendant 9 refused and placed Lineberry in the backseat of a police vehicle where he was officially arrested within two minutes of the stop.

**8:** During the same time, Defendant 3 Officer Andrew D. Hitch approached the driver's side door and was visibly agitated, yelling with anger. Without

16.

provocation, Hitch physically with excessive force jerked Twila Smedley (hereinafter Smedley) out of her vehicle. While screaming, Hitch continued to jostle Smedley toward the back of the vehicle and handcuffed her from behind.

**9:** Plaintiffs did not physically nor verbally resist arrest.

**10**: Plaintiffs were unarmed and did not at any point physically or verbally threaten the officers, nor did Plaintiffs attempt to flee.

**11:** After Plaintiffs were handcuffed, they remained calm and complied with each of the officers' commands as directed. Although Plaintiffs believed that Defendants were rogue officers and seemed dangerous, Plaintiffs did not resist because of the fear of being shot, tased, or beaten.

**12:** None of the Defendants had knowledge of any information to reasonably believe that Plaintiffs were armed, violent, or potentially dangerous.

**13**: As soon as Smedley was physically removed from her vehicle and physically jostled near the back of her vehicle, Defendant 3 Hitch, without provocation or justification, applied physical force. Also while restraining Smedley's arms from each side, Hitch made a sweeping offensive move with his foot (a warrior-style tactic), (Hitch later identified the assault as "I dumped her.") knocking Smedley's feet out from under her, tossing her onto the concrete with her head, shoulder, and hip, hitting the concrete with the full force of gravity and Hitch on top of her.

**14:** Once pinned to the concrete, Defendant 3 Hitch began searching and

17.

touching Smedley in a sexual manner, violently pushing down on her while screaming in her ear. **Notice**: The graphic details of Defendant Hitch's and the other officers' sexual assault, battery, and police misconduct will be supplemented once Plaintiffs' Compaint has been filed with this Court: Thereof, a Motion to File Under Seal its graphic contents to preserve Plaintiffs' right to dignity.

**15:** Smedley was in absolute shock and in panic during the incident. Smedley is a college-educated individual, having no criminal history of any kind, not even a speeding ticket on her record.

**16:** Defendant 3 Hitch, then placed his knee on Smedley's back pinning her to the concrete and tightened the handcuffs, still screaming at her. His words were blocked out by Smedley because of the pain and shock thereof.

**17:** Defendant 3 Hitch, then jerked Smedley up by the handcuffs, again slamming her against the police vehicle screaming, loudly insinuating several times that she had incriminating/illegal drugs called a "baggie" in her pockets, then forcefully using his body to pin Smedley to a police vehicle, screaming and touching her in a sexual manner as his body was pressed against hers.

**18:** No Officer attempted to intervene or stop the actions and violence executed by Defendant 3 Hitch.

**19:** Next, Defendant 3 Hitch placed Smedley with excessive force into the police

18.

vehicle still handcuffed from behind.

**20:** Within five minutes, Defendant 4, Officer Taylor Layn Parker took Smedley out of the police vehicle, where Defendant 3, Defendant 4, and Defendant 9 began to strip search her. **Notice**: The graphic details of Defendant Parker's strip search (in collaboration with other officers including Defendant Hitch), sexual assault, battery, and police misconduct will be supplemented once Plaintiffs' Compaint has been filed with this Court: Thereof, a Motion to File Under Seal its graphic contents to preserve Plaintiffs' right to dignity.

**21:** While in the parking lot with cameras present as the public in full view watching, (Body camera footage shows on-lookers yelling out to Defendant 3 Hitch asking, "CAN WE WATCH? CAN WE WATCH?". Hitch responded, "Yes, just stay out of my way!") Defendant 4, Parker began her strip search in collaboration with Defendants 3, 5, 6, 7, 8, 9, who are employees trained and supervised by Defendant 1 City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department, and with Defendant 11, Kyle Michael Froeder and Defendant 12 John Doe "The New Guy" present. The strip search executed upon Smedley was extensive. Defendant 9 stood within one foot of Smedley. Thereof, rearranged Smedley's clothing, holding flashlights looking under Smedley's clothing, and reaching inside Smedley's clothing to physically touch and inspect Smedley's body. These acts were against Smedley's right to

dignity, especially being handcuffed without consent.

**22:** Nothing incriminating nor illegal was found on either Plaintiffs' persons. While both Jed Lineberry and Smedley were arrested, being handcuffed from behind in the backseat of separate police vehicles, Defendant 7, E. Martin arrived in a vehicle identified as St. Johns County Sheriff's Department, which contained a K9 Deputy Dog named Volker (hereinafter "Drug Dog") to search inside and around Plaintiffs' vehicle.

**23:** The Drug Dog found nothing, making no stops the first time around Plaintiffs' vehicle.

**24:** Defendant 7, E. Martin again took the Drug Dog inside and around Plaintiffs' vehicle, stopped the Drug Dog in command by the passenger side door, jerking the leash. This time Defendant E. Martin yelled, and the Drug Dog hit (a false command hit). A "false command hit" is a well-known unconstitutional tactic applied by rogue law enforcement K-9 handlers when a legitimate reason to search cannot be found.

**25:** Although according to all Defendants the entire incident was based off an alleged piece of fish being "skipped scanned" from Defendant 10, Walmart Inc., Officer E. Martin acting as the Drug Dog K9 Handler led the Drug Dog to search Plaintiffs' vehicle inside and out, claiming a hit the second time around.

**26:** Defendants 3, 4, 5, 6, 7, 8, 9, 11, and 12 searched Plaintiffs' vehicle, without

permission, probable cause, nor a search warrant.

**27:** Defendants found nothing within the vehicle incriminating nor illegal.

**28:** Inside the vehicle were over a hundred dollars of food items that Plaintiffs had receipts for inside plastic shopping bags and several small automotive parts.

**29:** Plaintiff Smedley had a receipt in her pocket which was seized by Hitch for food items purchased at Walmart. (Since the date of this Complaint, the seized receipt has never been returned, but Plaintiffs have retained a copy of the same receipt from Walmart).

**30:** The doors (and all locked compartments requiring Plaintiffs' keys) of Plaintiffs' vehicle were opened by Defendant 3, 4, 5, 6, 7, 8, and 9 for Defendants 10, Walmart Inc. employees Defendant 11, Kyle and Defendant 12, John Doe "The New Guy" to execute their own search and seizure, collaborating closely with the State of Florida, St. Johns County Sheriff's Department Officers while on duty.

**31:** Defendant 10 Walmart Inc.'s employees, Defendants 11 and 12 searched and seized every item inside Plaintiffs' vehicle that was not attached and locked compartments. Not only did Defendants 11, Kyle and Defendant 12, John Doe "The New Guy" seize food items that Plaintiffs had receipts for, but the two Walmart Employees also seized many other items (Since the date of this

Complaint, these items have never been returned), such as automotive parts ordered online as many other items that were stored in Plaintiffs' vehicle.

**32:** The vehicle is a 2011 Chevrolet quad cab, 4x4, being used as a work truck, has a weather-tight cab, safety lights, and other compartments that were locked requiring a key.

**33:** The two Walmart Inc. employees Defendants 11 and 12, aided by Defendants 2, 3, 4, 5, 6, 7, 8, and 9 took the key out of the ignition and opened each locked compartment on Plaintiffs' vehicle prior to executing their search and seizure while collaborating closely with the State of Florida, St. Johns County Sheriff's Department Officers.

**34**: Once Plaintiffs arrived at the St. Johns County Sheriff's Department, County Jail, Smedley was visibly injured, requesting medical attention. The medical help was denied. Smedley was forcibly subjected to a chemical test and threatened with "medical lockdown" if refused. Also forced into Defendant 2, St. Johns County Sheriff's Departmant's *Tek84* radiation-emitting machine. The Officers in charge of the booking process, employees of Defendant 2 and as Plaintiffs refer to as a rogue police Department, violated Smedley's Fifth Amendment right to remain silent and 8th Amendment Right to be free from cruel and unusual punishment. Smedley, appearing as a more pliable person with a quieter demeanor, was placed in a holding cell and told by Defendant 2, St. Johns

22.

County Sheriff's Department employees that if she did not answer the Officers' questions, she would stay in the holding cell and not be bailed out. Confused and scared, Smedley requested to speak with a lawyer. Her demand was denied.

**35:** Both Plaintiffs then, as now, refused to answer questions, only to state that Plaintiffs have not committed any crime, that Defendants, especially the two Walmart Inc. employees Defendants 11, Kyle Michael Froeder and  Defendant 12, John Doe "The New Guy", did not have probable cause to stop, arrest, to search Plaintiffs' vehicle, to seize items, to strip search Smedley, nor to cause to Plaintiffs serious physical and emotional injuries.

**36:** Defendants 3, 4, 5, 6, 7, 8 and 9 laughed and gave each other high-fives while seizing items, searching Plaintiffs' vehicle, and during the incident.

**37**: It must further be noted that during the arrest and search Defendants 3, 4, 5, 6, 7, 8, 9, 11 and 12 were not only laughing and giving each other high-fives in celebration, but all Defendants made sure the public was enjoying themselves too. In other words, entertaining the public and enjoying in their misconduct, abuse of power as rogue police Officers protected by their employers' all-powerful rogue entities. Further evidence of negligence in the hiring, supervision, and retention of Defendants 1, 2, and 10's personnel.

**38:** It must further be noted that all Defendants present refused to intervene or

to stop the Plaintiffs from being pulled over, arrested, vehicle and persons searched, assaulted, sexually assaulted, and Plaintiffs' items seized.

**39:** Plaintiffs verbally complained to Defendant 3 Hitch that their handcuffs were too tight causing injury and harm, asking for Hitch to release some pressure. Defendant 3 Hitch refused.

**40:** Smedley asked for Defendant 3's, Hitch's name and badge identification. Hitch refused stating, "My supervisor said I do not have to give that to you." Defendant 8, Scoggins who was the supervising Officer on-scene and Defendant 7, E. Martin laughed at Smedley's demands, further taunting Smedley while she was in handcuffs. Although Plaintiffs' vehicle was lawfully parked inside the lines of a Walmart parking spot, Defendant 7 E. Martin, with a smile on his face, also bragged and threatened, "You know, I could have their vehicle towed out of here."

**41:** Defendant 3 Hitch, while making his official and on duty report, taunted Plaintiffs who were handcuffed from behind in the back of his patrol vehicle stating, "I would never be back there where you are" (Referring to his all-powerful employer's protection).

**42:** Plaintiffs allege Defendant 1, City of St. Augustine, Florida, Defendant 2 St Johns County Sheriff's Department, and Defendant 10 Walmart Inc. had actual or constructive notice of its employees' unfitness. Further states that Defendants

24.

Case 3:25-cv-00347-MMH-PDB    Document 1    Filed 04/14/25    Page 25 of 98 PageID 25

1, 2, and 10 have had many complaints and have been sued over the same misconduct, failure to train, and failure to supervise its employees.

**43:** All Defendants have a pattern of prior abuse.

**44:** Plaintiffs allege that it was an official policy or custom of the municipalities that was the "moving force" behind the alleged constitutional deprivations. In addition, Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns Sheriff's Department's failure to provide proper training for its employees represent a policy for which [the municipalities by collaboration] are being held liable, due to the actual cause of injuries. There is evidence of a history of widespread [p]rior abuse.

**45:** *Under Fla. R. Civ. P. § 1.120(c),* as well as many well-settled Florida cases, all that a plaintiff is required to do is *"aver generally that all conditions precedent have been performed or have occurred."* Plaintiffs have met this requirement.

### CAUSE OF ACTION I: NEGLIGENCE OF THE HIRING, SUPERVISION, AND RETENTION OF EMPLOYEES FOR DEFENDANT 1, CITY OF ST. AUGUSTINE, FLORIDA; DEFENDANT 2, ST. JOHNS COUNTY SHERIFF'S DEPARTMENT; AND DEFENDANT 10, WALMART INC.: Canton Liability

**Notice:** Plaintiffs reallege and incorporate by reference all paragraphs above.

**1:** Plaintiffs allege that it was an official policy or custom of the municipalities that was the "moving force" behind the alleged constitutional deprivation. In addition, Defendant 1, City of St. Augustine, Florida's, Defendant 2, St. Johns Sheriff's Department's, and Defendant 10, Walmart Inc.'s failure to provide

proper training for its employees represent a policy for which [the municipalities] are being held liable, due to the actual cause of the injuries. The City of St Augustine, Florida, St. Johns Sheriff's Department, and Walmart Inc. frequently fail to terminate or discipline officers/employees who demonstrate patterns of misconduct.

**2:** All Defendants jointly violated Plaintiffs' Constitutional Rights.

**3:** The rights were clearly established at the time of the violations.

**4:** Plaintiffs allege that it was an official policy or custom of the municipalities that was the "moving force" behind the alleged constitutional deprivation.

**5:** Plaintiffs were stopped and arrested within two minutes of the stop.

**6:** According to Defendant 3, Hitch, Defendant 4, Parker, and Defendant 9, Norcross who were Officers of Defendant 2, St. Johns County Sheriff's Department, and according to Defendant 11, Kyle, and Defendant 12, John Doe "The New Guy", employees of Defendant 10, Walmart Inc., they were contacted by Defendant 11, Kyle, stating that someone (but did not identify Plaintiffs) had just left Walmart with a "skip scanned" piece of fish, a non-violent offense.

**5:** Defendant 10, Walmart Inc. is a public trading company and a private business collaborating closely with the State of Florida, St. Johns County Sheriff's Department and/or performing a public function at the time the incident occurred given rise to this Complaint.

**6:** Defendant 11, Kyle and Defendant 12, John Doe "The New Guy" are employees of Defendant 10, Walmart Inc. employed each under the Title: Retail Asset Protection Investigator, collaborating closely with the State of Florida, St. Johns County Sheriff's Department and/or performing a public function at the time the incident occurred given rise to this Complaint.

**7:** Thereof, Defendant 10, Walmart Inc. was responsible for Defendant 11 and 12's training and supervision.

**8:** Defendant 10, Walmart Inc. was negligent in the hiring, supervision, and retention of its personnel, specifically Defendant 11, Kyle and Defendant 12, John Doe "The New Guy".

**9:** Plaintiffs allege that Defendant 1, City of St. Augustine, Florida, Defendant 2, St Johns County Sheriff's Department, and Defendant 10 Walmart Inc. had actual or constructive notice of its employees' unfitness. Further states that Defendants 1, 2, and 10 have received complaints and have been sued over the same misconduct, failure to train, and failure to supervise its employees.

**10:** All Defendants have a pattern of prior abuse.

**11:** Defendants 11 and 12 are private citizens who were employees of Defendant 10, Walmart Inc. at the time the incident occurred given rise to this Complaint.

**12:** Private individuals and government entities may be liable under *Section*

27.

*1983* if they engage in joint action or conspire with government officials to violate someone's rights. For example, suppose a private citizen works with police officers to fabricate evidence or wrongfully arrest someone. In that case, the private individual may be deemed to have acted under color of state law and be held accountable under *Section 1983.*

**13**: Once released from St. Johns County Jail, Plaintiffs called Defendant 2, St Johns County Sheriff's Department and inquired how to file a formal complaint on the Officers named within this Complaint and their jail staff.

**14**: Defendant 2, St. Johns County Sheriff's Department stated for the Plaintiffs to come to the St. Johns County Sheriff's Department located at 4015 Lewis Speedway St. Augustine, Florida 32084, thereof, file a formal complaint.

**15**: Plaintiffs arrived at the St. Johns County Sheriff's Department. Once there, Plaintiffs walked into the front lobby area where a lady working behind the front desk addressed Plaintiffs, asking if she could help them.

**16**: Plaintiffs informed the lady behind the front desk that they were there to file a formal complaint on several St. Johns County Sheriff's Department Officers.

**17**: Plaintiffs explained the details of their Complaint, where they were stopped, assaulted, Plaintiff Smedley was sexually assaulted, and physically assaulted, vehicle illegally stopped, illegally searched, items missing from their vehicle, and many of the details of the incident.

28.

**18**: The front desk employee asked for Plaintiffs to identify the Officers.

**19**: Plaintiffs at that time only had the names of Defendant 3, Hitch, Defendant 4, Parker, and Defendant 9, Norcross (All Officers/Defendants present at the time of the incident refused to provide to Plaintiffs their names and badge identification numbers).

**20**: The front desk employee left, returning a few minutes later refusing to take Plaintiffs' formal complaint, but she stated she would send out an Officer to take a report, for Plaintiffs to step outside the building, and wait on the bench for an Officer to arrive. Plaintiffs believed it was an odd procedure yet waited near the bench as instructed.

**21**: A few minutes later an Officer did arrive. The Officer's name is Officer S. Wampler.

**22:** Officer S. Wampler was in uniform and on official duty employed by Defendant 2, St. Johns County Sheriff's Department.

**23**: After Officer S. Wampler was informed of the incident, Officer S. Wampler stated to give to him a few minutes, that he would return, walking back toward his police vehicle.

**24**: Officer S. Wampler returned, demanding the ID from Jed Lineberry.

**25**: Jed Lineberry complied without question.

**26**: Officer S. Wampler went back to his patrol vehicle, returning a few minutes

later after running a search on Jed Lineberry without probable cause, further

demanding the ID from Smedley.

**27:** Smedley complied without question.

**28:** Officer S. Wampler left, returning a few minutes later after running a search

without probable cause on Smedley, ultimately refusing to take Plaintiffs'

Complaint. Further stating for Plaintiffs to remain there, as if they were being

detained, that a superior Sergeant Officer was on his way to speak with

Plaintiffs. Again, a very stressful, odd, and suspicious situation.

**29:** Plaintiffs complied without question.

**30**: Within ten minutes, another Officer employed by Defendant 2, St. Johns

County Sheriff's Department arrived. The Officer's rank is a Sergeant (LE SGT)

and his name is Sergeant Justin Allen Cash, #10379. (This time, Plaintiffs noted

his name off of his official uniform, because it was daylight).

**31:** Sergeant Cash who arrived, employed by Defendant 2 St. Johns County

Sheriff's Department asked about the incident, acting agitated with his

questions, mostly at the answers provided by Plaintiffs, as if he was already

informed and supported by his body language, made it clear for Plaintiffs [n]ot to

pursue their Complaint.

**32:** Thereof, the supervising Officer, Sergeant Cash, also refused to take

Plaintiffs' formal Complaint.

**33:** Plaintiffs believe and came to the conclusion that Defendant 1, City of St. Augustine, Florida and Defendant 2, St Johns County Sheriff's Department were operating a rogue police Department. Thereof, negligent in the hiring, supervision, and retention of its personnel.

**34:** All employees in collaboration with Defendant 2, St. Johns County Sheriff's Department did not act as peacemakers yet acted as trained warriors ready for battle regardless of the incident.

**35:** Plaintiffs were threatened with retaliation if they continued to file their Complaint.

**36:** Plaintiffs were respectful to the two Officers and left, knowing their only remaining option was to seek redress from the Federal Court.

**37:** While leaving St. Johns County Sheriff's Department, two patrol vehicles operating under color of law, employees of Defendants 2, St. Johns County Sheriff's Department followed Plaintiffs' vehicle at an unsafe distance, displaying further intimidation until Plaintiffs were out of the county limits of St. Johns County, another example of rogue officers and warrior-like tactics.

**38:** Smedley did visit with her doctor over the injuries.

**39:** Smedley's doctor sent her to the emergency room, where she received treatment.

**40:** The medical tests/treatments confirmed that Smedley received, but not

31.

limited to: abrasions, bruises, hematomas, neurological injuries, head injury, and neck injury.

**41:** Smedley continues to have pain and neurological symptoms in the affected areas, headaches, symptoms of anxiety, and panic attacks caused by the incident executed in collaboration with all Defendants.

**42:** It must be noted, Defendants 4, 5, 6, 7, 8, 9, 11 and 12 were present, watched the physical and sexual assault executed upon Smedley in a public area with cameras present, and did nothing to intervene as if the beating Smedley received by the Defendants was just the normal-acting process to deal with any and all incidents.

**43:** After Defendant 9, Norcross witnessed the excessive force, Smedley being thrown to the concrete by Defendant 3 Hitch, Norcross walked over to Hitch. They seemed to have an argument.

**44:** The end result, Defendant 9, Norcross also did nothing to stop the incidents, continuing to collaborate with the other Defendants.

**45:** Defendants 3, 4, 5, 6, 7, 8, and 9 are employees of Defendants 1 and 2. Defendants 11 and 12 are employees of Defendant 10. Defendants 3, 4, 5, 6, 7, 8, 9, 11 and 12 caused physical, emotional, and financial harm to Plaintiffs.

**46:** Defendants 1, 2, and 10 knew or should have known of each employee's risk to cause physical, emotional, and financial harm.

32.

**47**: Defendants 1, 2, and 10 employers of Defendants 3, 4, 5, 6, 7, 8, 9, 11 and 12 are liable.

**48:** Thereof, negligence was a "substantial factor" in causing Plaintiffs' physical, emotional, and financial harm.

**49:** Defendants 1, 2, and 10 did not exercise reasonable care in selecting competent employees.

WHEREFORE, Plaintiffs Jed Lineberry and Twila Smedley pray for judgment against Defendant 1, 2, and 10 as follows:

**1:** Plaintiffs seek jointly from all Defendants monetary judgment against Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. for compensatory, special, punitive damages, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.S.C. § 1983* and prejudgment interest to be determined by a Jury.

**2:** For the appointment of a receiver or similar authority to ensure that Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. properly train and supervise its employees.

**3:** Emotional Damages for Extreme and outrageous conduct: Defendants 1, 2, and 10's behavior was so egregious that it shocks the conscience. Amount to be

determined by a Jury.

**4.** Emotional Intent or Recklessness: Defendant 1, 2, and 10 intended to cause distress or acted with reckless disregard for the likelihood of causing distress. Amount to be determined by a Jury.

**5:** Severe Emotional Distress caused by all Defendants by collaboration: The emotional distress was significant and debilitating, causing Plaintiffs' physical, emotional, and financial harm. The amount to be determined by a Jury.

**6.** For such other and further relief as this Court and or jury deems just and equitable.

**7:** INJUNCTIVE RELIEF TO PREVENT FUTURE VIOLATIONS:

**a:** To prevent future violations, Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. be required to make changes and practices within their hiring, supervision, and retention of their employees as deemed appropriate by the jury within 30 days of the verdict.

**b:** To prevent future violations, Defendant 3, Hitch, Defendant 4, Parker, Defendant 7, E. Martin, Defendant 8, Scoggins, Defendant 9, A. Norcross be fired from any and all employment of Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department, never to be rehired.

**c:** To prevent future violations, Defendant 11, Kyle and Defendant 12, John Doe "The New Guy" be fired from any and all employment of Defendant 10, Walmart Inc., never to be rehired.

**d:** An immediate change in official policy that states each and every Officer on official duty at any incident to document/complete an independent report, including each Officer's name and badge number. Thereof, to sign their report as true and correct to the best of their knowledge.

**e:** An immediate change in policy, that states under no circumstances to allow an officer on official duty the ability to mute a body camera recording.

**CAUSE OF ACTION II: UNCONSTITUTIONAL STOP: FOURTH AMENDMENT VIOLATION AGAINST DEFENDANT 1, CITY OF ST. AUGUSTINE, FLORIDA, DEFENDANT 2, ST. JOHNS COUNTY SHERIFF'S DEPARTMENT, DEFENDANT 3, HITCH, DEFENDANT 4, PARKER, DEFENDANT 5, THOMPSON, DEFENDANT 6, ZUREK, DEFENDANT 7, MARTIN, DEFENDANT 8, SCOGGINS, DEFENDANT 9, NORCROSS, DEFENDANT 10, WALMART INC., DEFENDANT 11, KYLE, AND DEFENDANT 12, JOHN DOE: <u>Canton Liability</u>**

**Notice:** Plaintiffs reallege and incorporate by reference all paragraphs above.

**1:** Plaintiffs allege that it was an official policy or custom of the municipalities that was the "moving force" behind the alleged constitutional deprivation. In addition, Defendant 1, City of St Augustine, Florida's and Defendant 2, St. Johns County Sheriff's Department's failure to provide proper training for its employees represent a policy for which [the municipalities] by collaboration are being held

liable jointly, due to the actual cause of injuries. There is evidence of a history of widespread [p]rior abuse. The City of St. Augustine, Florida, St. Johns County Sheriff's Department and Walmart Inc. frequently fail to terminate or discipline its officers/employees who demonstrate patterns of misconduct.

**2:** The Stop was in collaboration with Defendants 3, 4, 5, 6, 7, 8, 9, 11, and 12.

**3:** The Stop was an unconstitutional stop without probable cause.

**4:** Defendants 4, 5, 6, 7, 8, 9, 11, and 12's failure to intervene in Defendant 3, Hitch's unconstitutional stop violated Plaintiffs' clearly established Fourth Amendment right.

**5:** The collaborated Stop, by all Defendants, was without reasonable suspicion to believe that a crime had been committed or was about to be committed.

**6:** It is unconstitutional under the Fourth Amendment to conduct a stop without probable cause and/or a warrant anywhere that a person has a reasonable expectation of privacy, unless certain exceptions apply.

**7:** Plaintiffs were inside their motor vehicle with the full expectation of privacy. No exceptions applied.

**8:** The unconstitutional stop was in collaboration by all Defendants did violate Plaintiffs' Fourth Amendment right against unreasonable stops.

**9:** All Defendants did not have a specific, articulate reason to believe Plaintiffs were involved in criminal activity.

36.

**10:** Defendant 9, Norcross actually stated after the stop and after the arrest, that he had no idea what the stop was about. Thereof, the Defendants lacked reasonable suspicion to believe that a crime had been committed or was about to be committed.

**11:** Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. were negligent in the hiring, supervision, and retention of its employees. Thereof, are also being held liable for all Causes of Action within this Complaint.

**12:** All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**13:** Defendant 10 Walmart Inc. is a public trading company and a private business. Defendant 11, Kyle and Defendant 12, John Doe are employees of Defendant 10 collaborating closely with the State of Florida, St. Johns County Sheriff's Department and/or performing a public function at the time the incident occurred given rise to this Complaint.

**14:** Defendant 10, Walmart Inc, Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department had knowledge of its employees' unfitness for the job prior to Plaintiffs' causes of action listed within this Complaint.

**15:** The unconstitutional stop caused to Plaintiffs physical harm and damages,

37.

such as loss of liberty, emotional distress, financial losses, and physical injury.

WHEREFORE, Plaintiffs Jed Lineberry and Twila Smedley pray for judgment against Defendants 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 as follows:

1. Plaintiffs seek jointly from all Defendants monetary judgment against Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, Defendant 3, Hitch, Defendant 4, Parker, Defendant 5, Thompson, Defendant 6, Zurek, Defendant 7, Martin, Defendant 8, Scoggins, Defendant 9, Norcross, Defendant 10, Walmart Inc., Defendant 11, Kyle, and Defendant 12, John Doe for compensatory, special, punitive damages and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.S.C. § 1983* and prejudgment interest to be determined by a Jury.

2. For the appointment of a receiver or similar authority to ensure that Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. properly train and supervise its employees.

3. Emotional Damages for Extreme and outrageous conduct: All Defendants' behavior was so egregious that it shocks the conscience. Amount to be determined by a Jury.

4. Emotional Intent or Recklessness:  All Defendants intended to cause distress

38.

or acted with reckless disregard for the likelihood of causing distress. Amount to be determined by a Jury.

**5.** Severe Emotional Distress caused by all Defendants: The emotional distress was significant and debilitating, causing Plaintiffs' physical, emotional, and financial harm. The amount to be determined by a Jury.

**6.** For such other and further relief as this Court and or jury deems just and equitable

**7**. INJUNCTIVE RELIEF TO PREVENT FUTURE VIOLATIONS:

    **a:** To prevent future violations, Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. be required to make changes and practices within their hiring, supervision, and retention of their employees as deemed appropriate by the jury within 30 days of the verdict.

    **b:** To prevent future violations, Defendant 3, Hitch, Defendant 4, Parker, Defendant 7, E. Martin, Defendant 9 Norcross and Defendant 8, supervising Officer Scoggins be fired from any and all employment of Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department, never to be rehired.

    **c:** To prevent future violations, Defendant 11, Kyle Michael Froeder and Defendant 12, John Doe "The New Guy" be fired from any and all

employment of Defendant 10, Walmart Inc., never to be rehired.

**d:** An immediate change in official policy that states each and every

Officer on official duty at any incident to document/complete an

independent report, including each Officer's name and badge number.

Thereof, to sign their report as true and correct to the best of their

knowledge.

**e:** An immediate change in policy, that states under no circumstances to

allow an officer on official duty the ability to mute a body camera recording.

**CAUSE OF ACTION III: UNCONSTITUTIONAL SEARCH: FOURTH
AMENDMENT VIOLATION AGAINST DEFENDANT 1, CITY OF ST.
AUGUSTINE, FLORIDA, DEFENDANT 2, ST. JOHNS COUNTY SHERIFF'S
DEPARTMENT, DEFENDANT 3, HITCH, DEFENDANT 4, PARKER,
DEFENDANT 5, THOMPSON, DEFENDANT 6, ZUREK, DEFENDANT 7,
MARTIN, DEFENDANT 8, SCOGGINS, DEFENDANT 9, NORCROSS,
DEFENDANT 10, WALMART INC. DEFENDANT 11, KYLE AND DEFENDANT
12 JOHN DOE: Canton Liability**

**Notice:** Plaintiffs reallege and incorporate by reference all paragraphs above.

**1:** Plaintiffs allege that it was an official policy or custom of the municipalities

that was the "moving force" behind the alleged constitutional deprivation. In

addition, Defendant 1, City of St. Augustine, Florida's, Defendant 2, St. Johns

County Sheriff's Department's and Defendant 10, Walmart Inc.'s failure to

provide proper training for its employees represent a policy for which [the

municipalities] are being held liable, due to the actual cause of the injuries.

**2:** There is evidence of a history of widespread [p]rior abuse.

40.

**3**: The City of St Augustine, Florida, St. Johns County Sheriff's Department, and Walmart, Inc. frequently fail to terminate or discipline officers/employees who demonstrate patterns of misconduct.

**4**: The Stop, resulting in a Search, was a joint effort by Defendant, 3 Hitch, Defendant 4, Parker, Defendant 5, Thompson, Defendant 6, Zurek, Defendant 7 E. Martin, Defendant 8, Scoggins, Defendant 9, Norcross, Defendant 11, Kyle and Defendant 12 Joe Doe "The New Guy".

**5**: The Stop, resulting in a Search, was an unconstitutional search without probable cause.

**6**: The Stop, resulting in a search by the Defendants, was without reasonable suspicion to believe that a crime had been committed or was about to be committed.

**7**: It is unconstitutional under the Fourth Amendment to conduct a stop, resulting in a search without a warrant anywhere that a person has a reasonable expectation of privacy, unless certain exceptions apply.

**8**: Plaintiffs were inside their motor vehicle with the full expectation of privacy. No exceptions applied.

**9**: The unconstitutional stop resulting in a search in collaboration with all Defendants violated Plaintiff's' Fourth Amendment Right.

**10**: All Defendants did not have a specific, articulate reason to believe Plaintiffs

41.

were involved in criminal activity.

**11:** Defendant 9, Norcross actually stated after the stop resulting in a search, resulting in an arrest, that he had no idea what the stop was about. Thereof, the Defendants lacked reasonable suspicion to believe that a crime had been committed or was about to be committed.

**12:** Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. were negligent in the hiring, supervision, and retention of its employees. Thereof, are being held liable jointly for all causes of action within this Complaint.

**13:** All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**14:** Defendant 10 Walmart, Inc. is a public trading company and a private business. Defendant 11 Kyle and Defendant 12, John Doe "The New Guy" are employees of Defendant 10 collaborating closely with the State of Florida, St. Johns County Sheriff's Department and/or performing a public function at the time the incident occurred given rise to this Complaint.

**15:** Defendant 10, Walmart, Inc., Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department had knowledge of its employees' unfitness for the job prior to the incident filed against them within this Complaint.

42.

**16:** All Defendants by collaboration violated Plaintiffs' constitutional rights.

**17:** The rights were clearly established at the time of the violations.

**18:** The Stop, resulting in a search by all Defendants, was an unconstitutional search.

**19:** It is unconstitutional under the Fourth Amendment to conduct a stop, followed by a search, without a warrant anywhere that a person has a reasonable expectation of privacy, unless certain exceptions apply.

**20:** Plaintiffs were inside their motor vehicle with the full expectation of privacy. No exceptions warranted for Defendants to stop, resulting in a search of Plaintiffs' vehicle nor persons.

**21:** The unconstitutional Stop, followed by a Search by all Defendants, violated Plaintiff's' Fourth Amendment right against unreasonable searches.

**22:** All Defendants did not have a specific, articulate reason to believe Plaintiffs were involved in criminal activity, no incriminating nor illegal items were in plain view, nor found during the search.

**23:** All Defendants did not have cause to have any reasonable belief that Plaintiffs were able to flee, because Plaintiffs' vehicle was blocked in by seven of the Defendant 2, St. John County Sheriff's Department Officers' vehicles. Moreover, Defendant 3, Hitch and Defendant 9, Norcross had already arrested Plaintiffs prior to their search. Plaintiffs' vehicle was parked on private property

43.

and not an obstruction. Thereof, no cause to tow nor search for inventory.

**24**: Nothing incriminating nor illegal was found on either Plaintiffs' persons, nor within their vehicle.

**25**: All Defendants did not have probable cause to search Plaintiffs' vehicle nor persons without a warrant.

**26:** Defendant 9, Norcross actually stated after the stop, resulting in a search, resulting in an arrest, that he had no idea what the stop was about. Thereof, all Defendants lacked reasonable suspicion to believe that a crime had been committed or was about to be committed.

**27:** The unconstitutional stop followed by a search caused Plaintiffs physical harm and damages, such as loss of liberty, emotional distress, financial losses, and physical injury.

WHEREFORE, Plaintiffs Jed Lineberry and Twila Smedley pray for judgment against Defendants 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 as follows:

**1.** Plaintiffs seek jointly from all Defendants monetary judgment against Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, Defendant 3, Hitch, Defendant 4, Parker, Defendant 5, Thompson, Defendant 6, Zurek, Defendant 7, Martin, Defendant 8, Scoggins, Defendant 9, Norcross, Defendant 10, Walmart Inc., Defendant 11, Kyle and

Defendant 12, John Doe "The New Guy" for compensatory, special, punitive damages, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.,S.C. § 1983* and prejudgment interest to be determined by a Jury.

**2**. For the appointment of a receiver or similar authority to ensure that Defendant 1, City of St Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department and Defendant 10, Walmart Inc. properly train and supervise its employees.

**3.** Emotional Damages for Extreme and outrageous conduct: All Defendants' behavior was so egregious that it shocks the conscience. Amount to be determined by a Jury.

**4.** Emotional Intent or Recklessness: All Defendants by collaboration intended to cause distress or acted with reckless disregard for the likelihood of causing distress. Amount to be determined by a Jury.

**5.** Severe Emotional Distress caused by all Defendants: The emotional distress was significant and debilitating, causing Plaintiffs' physical, emotional, and financial harm. The amount to be determined by a Jury.

**6**. For such other and further relief as this Court and or jury deems just and equitable.

**7.** INJUNCTIVE RELIEF TO PREVENT FUTURE VIOLATIONS:

**a**: To prevent future violations, Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. be required to make changes and practices within their hiring, supervision, and retention of their employees as deemed appropriate by the jury within 30 days of the verdict.

**b:** To prevent future violations, Defendant 3, Hitch, Defendant 4, Parker, Defendant 7, Martin, Defendant 8, Scoggins, and Defendant 9 Norcross be fired from any and all employment of Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department, never to be rehired.

**c:** To prevent future violations, Defendant 11, Kyle Michael Froeder and Defendant 12, John Doe "The New Guy" be fired from any and all employment of Defendant 10, Walmart Inc., never to be rehired.

**d:** An immediate change in official policy that states each and every Officer on official duty at any incident to document/complete an independent report, including each Officer's name and badge number. Thereof, to sign their report as true and correct to the best of their knowledge.

**e:** An immediate change in policy, that states under no circumstances to allow an officer on official duty the ability to mute a body camera

recording.

## CAUSE OF ACTION IV: FOURTH AMENDMENT VIOLATION: UNCONSTITUTIONAL ARREST AGAINST DEFENDANT 1, CITY OF ST. AUGUSTINE, FLORIDA, DEFENDANT 2, ST. JOHNS COUNTY SHERIFF'S DEPARTMENT, DEFENDANT 3, HITCH, DEFENDANT 4, PARKER, DEFENDANT 5, THOMPSON, DEFENDANT 6, ZUREK, DEFENDANT 7, MARTIN, DEFENDANT 8, SCOGGINS, DEFENDANT 9, NORCROSS, DEFENDANT 10, WALMART INC., DEFENDANT 11, KYLE AND DEFENDANT 12 JOHN DOE: Canton Liability

**Notice**: Plaintiffs reallege and incorporate by reference all paragraphs above.

**1:** Plaintiffs allege that it was an official policy or custom of the municipalities that was the "moving force" behind the alleged constitutional deprivation. In addition, Defendant 1, City of St; Augustine, Florida's, Defendant 2, St. Johns County Sheriff's Department's, and Defendant 10, Walmart Inc.'s failure to provide proper training for its employees represent a policy for which [the municipalities] are being held liable, due to the actual cause of the injuries. There is evidence of a history of widespread [p]rior abuse. The City of St Augustine, Florida, St. Johns County Sheriff's Department and Walmart Inc. frequently fail to terminate or discipline officers/employees who demonstrate patterns of misconduct.

**2:** All Defendants violated Plaintiffs' constitutional rights.

**3:** The rights were clearly established at the time of the violations.

**4:** The arrests executed personally by Defendant 3, Hitch and Defendant 9,

47.

Norcross were made without probable cause, meaning the arresting officers lacked a reasonable basis to believe Plaintiffs had committed a crime at the time of the arrest, or was about to commit a crime.

**5:** The arrest was unreasonable and violated Plaintiffs' Fourth Amendment rights.

**6:** The unconstitutional arrest caused Plaintiffs harm and damages, such as loss of liberty, emotional distress, financial losses, and physical injury.

**7:** The arrests of Plaintiffs were seizures of their bodies. Plaintiff's' Fourth Amendment violations also applies to the person themselves unreasonable. Thereof, illegally restrains freedom of movement.

**8:** Probable cause and/or the lack of reasonable suspicion limited all Defendants' power to arrest or detain Plaintiffs. All Defendants must have a reasonable basis to believe that Plaintiffs had committed a crime [b]efore they could have lawfully detained them.

**9:** The Supreme Court has long interpreted the Fourth Amendment's phrase "the right of the people to be secure in their persons" as a protection against arbitrary arrests. So, an arrest without a warrant or probable cause is seen as an unreasonable seizure of one's person under the Fourth Amendment.

**10:** It must be noted that Plaintiff Jed Lineberry was jerked out of his vehicle by Defendant 9, Norcross and detained/seized/arrested within two minutes of the

48.

stop. Plaintiff Smedley was jerked out of her vehicle by Defendant 3, Hitch and detained/seized/arrested within two minutes of the stop.

**11:** As Smedley was being handcuffed, detained/seized/arrested, she was sexually assaulted, beaten by Defendant 3, Hitch within two minutes of the stop.

**12:** Thereof, both Plaintiffs were detained prior to any Defendant having probable cause, reasonable belief, or suspicion that a crime was committed or about to be committed. At no time was there any reasonable belief that Plaintiffs had committed or about to commit any crime, specifically not a crime of violence. **Noted**: Nothing was found on Plaintiffs' person nor within their vehicle that was illegal prior to or after the stop, arrest and/or search.

**13**: It must further be noted that all Defendants present refused to intervene or to stop the Plaintiffs from being pulled over, arrested, vehicle and persons searched, assaulted, sexually assaulted, and Plaintiffs' items seized.

WHEREFORE, Plaintiffs Jed Lineberry and Twila Smedley pray for judgment against 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, Defendant 3, Hitch, Defendant 4, Parker, Defendant 5, Thompson, Defendant 6, Zurek, Defendant 7, Martin, Defendant 8, Scoggins, Defendant 9, Norcross, Defendant 10, Walmart Inc., Defendant 11, Kyle, and Defendant 12, John Doe.

**1.** Plaintiffs seek jointly from all Defendants monetary judgment against

49.

Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County

Sheriff's Department, Defendant 3, Hitch, Defendant 4, Parker, Defendant 5,

Thompson, Defendant 6, Zurek, Defendant 7, Martin, Defendant 8, Scoggins,

Defendant 9, Norcross, Defendant 10, Walmart Inc., Defendant 11, Kyle, and

Defendant 12, John Doe for compensatory, special, punitive damages, and

punitive damages together with costs and disbursements, including reasonable

attorneys' fees, under *42 U.S.C. § 1988, U.S.C. § 1983* and prejudgment

interest to be determined by a Jury.

**2**. For the appointment of a receiver or similar authority to ensure that

Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County

Sheriff's Department, and Defendant 10, Walmart Inc. properly train and

supervise its employees.

**3.** Emotional Damages for Extreme and outrageous conduct: All Defendants'

behavior was so egregious that it shocks the conscience. Amount to be

determined by a Jury.

**4.** Emotional Intent or Recklessness: All Defendants intended to cause distress

or acted with reckless disregard for the likelihood of causing distress. Amount to

be determined by a Jury.

**5.** Severe Emotional Distress caused by all Defendants: The emotional distress

was significant and debilitating causing Plaintiffs' physical, emotional, and

financial harm. The amount to be determined by a Jury.

6. For such other and further relief as this Court and or jury deems just and equitable.

7: INJUNCTIVE RELIEF TO PREVENT FUTURE VIOLATIONS:

a: To prevent future violations, Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department and Defendant 10, Walmart Inc. be required to make changes and practices within their hiring, supervision, and retention of their employees as deemed appropriate by the jury within 30 days of the verdict.

b: To prevent future violations, Defendant 3, Hitch, Defendant 4, Parker, Defendant 7, E. Martin, Defendant 8, Scoggins, Defendant 9 Norcross be fired from any and all employment of Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department, never to be rehired.

c: To prevent future violations, Defendant 11, Kyle Michael Froeder and Defendant 12, John Doe "The New Guy" be fired from any and all employment of Defendant 10, Walmart Inc., never to be rehired.

d. An immediate change in official policy that states each and every Officer on official duty at any incident to document/complete an independent report, including each Officer's name and badge number.

51.

Thereof, to sign their report as true and correct to the best of their

knowledge.

**e:** An immediate change in policy, that states under no circumstances to

allow an officer on official duty the ability to mute a body camera recording.

**CAUSE OF ACTION V: FOURTH AMENDMENT VIOLATION EXCESSIVE
FORCE AGAINST DEFENDANT 1, CITY OF ST. AUGUSTINE, FLORIDA,
DEFENDANT 2, ST. JOHNS COUNTY SHERIFF'S DEPARTMENT,
DEFENDANT 3, HITCH, DEFENDANT 4, PARKER, DEFENDANT 5,
THOMPSON, DEFENDANT 6, ZUREK, DEFENDANT 7, MARTIN,
DEFENDANT 8, SCOGGINS, DEFENDANT 9, NORCROSS, DEFENDANT 10,
WALMART INC. DEFENDANT 11, KYLE, AND DEFENDANT 12 JOHN DOE:
<u>Canton Liability</u>**

**Notice:** Plaintiffs reallege and incorporate by reference all paragraphs above.

**1:** Plaintiffs allege that it was an official policy or custom of the municipalities

that was the "moving force" behind the alleged constitutional deprivation. In

addition, Defendant 1, City of St. Augustine, Florida's and Defendant 2, St.

Johns County Sheriff's Department's failure to provide proper training for its

employees represent a policy for which [the municipalities] are being held liable,

due to the actual cause of the injuries. There is evidence of a history of

widespread [p]rior abuse. The City of St Augustine, Florida, St. Johns County

Sheriff's Department, and Walmart Inc. frequently fail to terminate or discipline

its officers/employees who demonstrate patterns of misconduct.

**2:** Effectuating an arrest, using force to effectuate an arrest, and intervening in

the use of force is unusual, but a recurring situation which the City of St.

Augustine, Florida, St. Johns County Sheriff's Department, and Walmart Inc.

Enforcement Officers/employees encounter on a regular basis.

**3:** Plaintiff, Smedley has a claim under *Title 42 U.S.C. Section 1983* for the

following federal constitutional and/or statutory civil rights violations.

**4: Alleged:** Prior to the incident on February/10/2024 that gave rise to this Civil

Rights Complaint, Plaintiff Twila Smedley, a white female (hereinafter Smedley),

5ft. 8 Inches, 155 lbs. had never been arrested, nor convicted of any crime,

misdamenor, nor felony. She did [n]ot have any criminal history, not even a

speeding ticket. Smedley has never had any physical training for self-defense.

Smedley has never been involved within any physical altercation prior to

February/10/2024.

**5: Alleged:** On February/10/2024 Defendant 3, Officer Andrew D. Hitch while on

official duty while acting within his official duty under color of law did personally

commit physical acts upon Smedley that were excessive force. Afterward,

Defendants jointly and in the public view committed celebratory conduct while

Plaintiffs were handcuffed in separate police vehicles. Hitch bragged to

Defendants 4, 5, 6, 7, 8, 9, 11, and 12 stating, "I DUMPED HER", a warrior-type

training tactic. Hitch's acts were intentionally committed and violated Smedley's

Fourth Amendment Right to not be subjected to excessive force. Defendant

Hitch caused physical, emotional, and financial harm to Smedley, also resulting

in emotional and physical injury. The injuries were so severe that Smedley was admitted to emergency care at St. Vincent hospital for treatment. Defendant 3, Hitch intentionally committed excessive force, Defendant Hitch's acts are in violation of Plaintiff Smedley's Fourth Amendment right to [n]ot be subject to excessive force. The Fourth Amendment to the United States Constitution prohibited Defendant 3, Hitch from the use of excessive force in the course of this arrest, investigatory stop, and unlawful seizure for this incident. Excessive force by Defendant 3, Hitch was force that is objectively unreasonable under the circumstances. Defendant 3, Hitch is [n]ot a peacemaker. Plaintiffs believe Defendant 3, Hitch is a rogue, out-of-control police officer.

**6**: It must further be noted that all Defendants present refused to intervene or to stop the Plaintiffs from being pulled over, arrested, vehicle and persons searched, assaulted, sexually assaulted, and Plaintiffs' items seized.

WHEREFORE, Plaintiffs Jed Lineberry and Twila Smedley pray for judgment against Defendant 1, City of Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, Defendant 3, Hitch, Defendant 4, Parker, Defendant 5, Thompson, Defendant 6, Zurek, Defendant 7, Martin, Defendant 8, Scoggins, Defendant 9, Norcross, Defendant 10, Walmart Inc., Defendant 11, Kyle, and Defendant 12, John Doe.

**1.** Plaintiffs seek jointly from all Defendants monetary judgment, compensatory,

54.

special, punitive damages, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.S.C. § 1983* and prejudgment interest to be determined by a Jury. Defendant 1, City of St. Augustine, Florida,  Defendant 2, St. Johns County Sheriff's Department, Defendant 3, Hitch, Defendant 4, Parker, Defendant 5, Thompson, Defendant 6, Zurek, Defendant 7, Martin, Defendant 8, Scoggins, Defendant 9, Norcross, Defendant 10, Walmart Inc., Defendant 11, Kyle, and Defendant 12, John Doe for compensatory, special, punitive, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.S.C.  § 1983* and prejudgment interest to be determined by a Jury.

**2.** For the appointment of a receiver or similar authority to ensure that Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department and Defendant 10, Walmart Inc. properly train and supervise its employees.

**3.** Emotional Damages for Extreme and outrageous conduct: All Defendants' behavior was so egregious that it shocks the conscience. Amount to be determined by a Jury.

**4.** Emotional Intent or Recklessness: All Defendants intended to cause distress or acted with reckless disregard for the likelihood of causing distress. Amount to

be determined by a Jury.

**5.** Severe Emotional Distress caused by all Defendants: The emotional distress was significant and debilitating, causing Plaintiffs' physical, emotional, and financial harm. The amount to be determined by a Jury.

**6.** For such other and further relief as this Court and or jury deems just and equitable

**7.** INJUNCTIVE RELIEF TO PREVENT FUTURE VIOLATIONS:

**a:** To prevent future violations, Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department, and Defendant 10, Walmart Inc. be required to make changes and practices within their hiring, supervision, and retention of their employees as deemed appropriate by the jury within 30 days of the verdict.

**b:** To prevent future violations, Defendant 3, Hitch, Defendant 4, Parker, Defendant 7, Martin, Defendant 8, Scoggins, Defendant 9 Norcross be fired from any and all employment of Defendant 1, City of St. Augustine, Florida, and Defendant 2, St. Johns County Sheriff's Department, never to be rehired.

**c:** To prevent future violations, Defendant 11, Kyle Michael Froeder and Defendant 12, John Doe "The New Guy" be identified and fired from any and all employment of Defendant 10, Walmart Inc., never to be rehired.

**d.** An immediate change in official policy that states each and every Officer on official duty at any incident to document/complete an independent report, including each Officer's name and badge number. Thereof, to sign their report as true and correct to the best of their knowledge.

**e:** An immediate change in policy, that states under no circumstances to allow an officer on official duty the ability to mute a body camera recording.

## CAUSE OF ACTION VI: FOURTH AMENDMENT VIOLATION STRIP SEARCH: SEXUAL ASSAULT BY OFFICERS AGAINST DEFENDANT 1, CITY OF ST. AUGUSTINE, FLORIDA, DEFENDANT 2, ST. JOHNS COUNTY SHERIFF'S DEPARTMENT, DEFENDANT 3, HITCH, DEFENDANT 4, PARKER, DEFENDANT 5, THOMPSON, DEFENDANT 6, ZUREK, DEFENDANT 7, MARTIN, DEFENDANT 8, SCOGGINS, DEFENDANT 9, NORCROSS,  DEFENDANT 10, WALMART INC., DEFENDANT 11, KYLE, <u>AND DEFENDANT 12 JOHN DOE: Canton Liability</u>

**Notice**: Plaintiffs reallege and incorporate by reference all paragraphs above. Plaintiff Smedley has a claim under *Title 42 U.S.C. Section 1983* for the following federal constitutional and/or statutory civil rights violations.

**1:** Plaintiffs allege that it was an official policy or custom of the municipalities that was the "moving force" behind the alleged constitutional deprivation. In addition, Defendant 1, City of St. Augustine, Florida's, Defendant 2, St. Johns County Sheriff's Departments', and Defendant's 10, Walmart Inc.'s failure to provide proper training for its employees represent a policy for which [the municipalities] are being held liable, due to the actual cause of the injuries.

There is evidence of a history of widespread [p]rior abuse. The City of St. Augustine, Florida, St. Johns County Sheriff's Department and Walmart Inc. frequently fail to terminate or discipline officers/employees who demonstrate patterns of misconduct.

**Case Statute***: Florida Statute 2024: 901.211 Strip searches of persons arrested; body cavity search.—(1) As used in this section, the term "strip search" means having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual or manual inspection of the genitals; buttocks; anus; breasts, in the case of a female; or undergarments of such person. (3) Each strip search shall be performed by a person of the same gender as the arrested person and on premises where the search cannot be observed by persons not physically conducting or observing the search pursuant to this section. Any observer shall be of the same gender as the arrested person. (4) Any body cavity search must be performed under sanitary conditions.*

**1: Alleged:** After Smedley was detained, handcuffed, searched, and placed in the backseat of a police vehicle and after Defendant 3, Hitch had committed Excessive Force, Smedley was taken out of the police vehicle by Defendant 4, Parker. With the full cooperation of Defendant 3, Hitch and Defendant 9, Norcross, Smedley still handcuffed with her hands behind her back, traumatized and physically bleeding from the excessive force, along with Defendants 5, 6, 7,

58.

8, 9, 11 and 12 mostly males present, Defendant 4, Parker, a female (whose sexual orientation is believed to be a bisexual/lesbian) began committing a strip search upon Smedley in a public area. The strip search was executed with the assistance of all males and one female. Defendants 5, 6, 7, 8, 9, 11, and 12 being present. Male officers Defendants 3 and 9 along with Defendant 4 were shining flashlights down inside Smedley's clothing, manually rearranging her clothing, exposing her breasts, buttocks, and genitals while Defendant 4 touched her aggressively within the same private areas. Defendant 4, Parker asked Smedley private and sensitive questions in front of the public and male Officers/Defendants 3, 5, 6 7, 8, 9, 11, and 12. Smedley responded quietly. Defendant 3, Hitch, a male officer, Defendant 4, Parker, a female officer and Defendant 9, Norcross, a male officer continued with their strip search. Defendants 3, 4, 5, 6, 7, 8, 9, 11, and 12 were acting within his/her official duties under color of law did commit a physical body strip search and cavity strip search upon Smedley that caused physical, emotional, and financial harm to Smedley resulting in emotional and physical injury. The injuries were so severe that Smedley was admitted to the emergency care at St. Vincent hospital for treatment. Smedley still suffers from the injuries physically, neurologically, emotionally, and mentally caused by the sexual assault, trauma, and excessive force.

59.

**2: Alleged:** Defendants Parker, Hitch, and Norcross intentionally committed the strip search. Defendant 3 Hitch, while gratuitous touching/groping Smedley during the arrest, yelled out "she has 'a dime bag' in her pocket!" Smedley still being handcuffed from behind, Defendant 3 Hitch used his groin area to shove Smedley up against the vehicle while committing searches through Smedley's genital area, groin, inner thighs, buttocks, and breasts. For the record, no drugs of any kind were found on either Plaintiffs, nor within their vehicle, nor nothing illegal. The only item found upon any Plaintiff was, Smedley, having a Walmart receipt in her right pocket for the food items purchased at Walmart. All Defendants' actions by collaboration are in violation of Smedley's Fourth Amendment right to [n]ot be subjected to unreasonable Search and a strip search. The Fourth Amendment to the United States Constitution prohibited all three Defendants, Parker, Hitch, and Norcross from committing a strip search in a public area in view of the public and with males present. Thereof, rearranging clothing and holding flashlights looking under Smedley's clothing in the course of their arrest, investigatory stop, or other (lawful and/or unlawful) seizure (It must be noted, that Smedley was arrested, placed in the backseat of the police vehicle, removed from vehicle, and then strip searched). The Strip Search committed upon Smedley, a young white female by the officers, at a public Walmart parking lot, while handcuffed from behind and after prior arrest, in front

60.

of several male officers, male citizens, Walmart cameras and with no evidence
of wrongdoing was a search that was objectively unreasonable. Thereof,
violated Smedley's basic human rights and Florida law.

It must be noted that after the strip search, Defendant 3, Hitch and
Defendant 9, Norcross spoke with each other muting the body camera mikes.
Norcross approached Hitch requested a "Deputy Conference" where Hitch
immediately pronounced, "Deputy Conference!" and laughed, pressing a button
on his own body camera where the footage goes silent thereafter, for more than
a minute the two on-duty male St Johns County Sheriff's Department Officers
converse back and forth continuing laughing and smiling after the strip search.

All Defendants present during the strip search, specifically Defendant 8,
Sergeant Scoggins, who was acting as supervising officer, **did nothing to stop
or intervene in the strip search nor the Officer's misconduct**. The Officers
under Sergeant Scoggins (Defendants 3, 4, 5, 6, 7, 8, and 9) lacked reasonable
suspicion and probable cause warranting a strip search. All Defendants failed to
provide written authorization, specifically Defendant 8, Sergeant Scoggins failed
provide written authorization to authorize such body cavity search in violation of
Florida Statutes Chapter 901.211:

> "No law enforcement officer shall order a strip search within the agency or
> facility without obtaining the written authorization of the supervising officer

on duty"

WHEREFORE, Plaintiffs Jed Lineberry and Twila Smedley pray for judgment against Defendants 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 as follows.

1. Plaintiffs seeks jointly from all Defendants monetary judgment for compensatory, special, and punitive damages, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.S.C. § 1983* and prejudgment interest to be determined by a Jury.

2. For the appointment of a receiver or similar authority to ensure that Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department and Defendant 10, Walmart Inc. properly train and supervise its employees.

3: Emotional Damages for Extreme and outrageous conduct: All Defendants' behavior was so egregious that it shocks the conscience. Amount to be determined by a Jury.

4. Emotional Intent or Recklessness: All Defendants intended to cause distress or acted with reckless disregard for the likelihood of causing distress. Amount to be determined by a Jury.

5: Severe Emotional Distress caused by all Defendants: The emotional distress was significant and debilitating, causing Plaintiffs' physical, emotional, and

financial harm. The amount to be determined by a Jury.

6. For such other and further relief as this Court and or jury deems just and equitable.

7. INJUNCTIVE RELIEF TO PREVENT FUTURE VIOLATIONS:

a: To prevent future violations, Defendant 1, City of St. Augustine, Florida, Defendant 2, St. Johns County Sheriff's Department and Defendant 10, Walmart Inc. be required to make changes and practices within their hiring, supervision, and retention of their employees as deemed appropriate by the jury within 30 days of the verdict. Thereafter, report back to this Court it's changes within 45 days of the verdict.

b: To prevent future violations and to represented as a deterrent, Defendant 3, Hitch, Defendant 4, Parker, Defendant 7, Martin, Defendant 8, Scoggins, and Defendant 9 Norcross be fired from any and all employment of Defendant 1, City of St. Augustine, Florida and Defendant 2, St. Johns County Sheriff's Department, never to be rehired.

c: To prevent future violations, Defendant 11, Kyle Michael Froeder and Defendant 12, John Doe "The New Guy" be fired from any and all employment of Defendant 10, Walmart Inc., never to be rehired.

d. An immediate change in official policy that states each and every

63.

Officer on official duty at any incident to document/complete an

independent report, including each Officer's name and badge number.

Thereof, to sign their report as true and correct to the best of their

knowledge.

e: An immediate change in policy, that states under no circumstances to

allow an officer on official duty the ability to mute a body camera recording.

**CAUSE OF ACTION VII: FIRST, THIRD, FORTH, FIFTH, and NINTH
AMENDMENT VIOLATIONS; RIGHT TO PRIVACY ;
COLLECTION/RETENTION/DISTRIBUTION (RENT/TRADE/SELL) OF
BIOMETRIC INFORMATION/DATA BY DEFENDANT 10, WALMART INC.
(ONLY): Canton Liability**

**Notice**: Plaintiffs reallege and incorporate by reference all paragraphs above.

Plaintiffs have a claim under *Title 42 U.S.C. Section 1983* for the following

federal constitutional and/or statutory civil rights violations.

**1:** All conditions precedent to file this Complaint have been performed or

have occurred given rise to this Complaint.

**2: Fact:** In Florida, collecting biometrics like fingerprints, using unique

physical and behavioral traits to identify and authenticate individuals,

relying on measuring and analyzing these characteristics to verify identity,

offering a more secure alternative to traditional methods like passwords.

Examples of biometrics include fingerprints, facial recognition, iris scans,

and voice recognition while not inherently a Fourth Amendment violation,

64.

must be done within the bounds of reasonable searches and seizures, meaning it requires a lawful basis, such as a warrant or probable cause. In Black's Law Dictionary, "biometrics" refers to the measurement and statistical analysis of people's unique physical and behavioral characteristics, used for identification and verification. For example, but not limited to: DNA, fingerprints, voiceprints/voice recognition, scans of a hand, faceprint/facial geometry recognition, iris recognition, retina recognition, multimodal data, and even behavioral patterns like typing rhythm or gait.

**3: Fact:** The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.

**4: Fact:** This means that law enforcement generally needs a warrant, based on probable cause, to conduct a search or seize a person Biometrics and Searches:  Biometric data, like fingerprints or facial recognition data, is considered a form of personal information, and collecting it can be viewed as a search.

**5: Argument:** Generally a private entities and private individuals cannot be sued for a Fourth Violation: However, Defendant 10, Walmart Inc. is a public trading company and a private business that did at the commencement of this Complaint collaborate closely with Defendant 2,

State of Florida, St. Johns County Sheriff's Department, and/or performing a public function at the time the incident occurred given rise to this Complaint. Thereof, shared the biometrics data it had collected from Plaintiffs in collaboration with Defendant 2, St. Johns County Sheriff's Department during their stop, arrest, search.

**6: Fact:** Private business, individuals and government entities may be liable under *Section 1983* if they engage in joint action or conspire with government officials to violate someone's rights. For example, suppose a private citizen works with police officers to fabricate evidence or wrongfully arrest someone. In that case, the private individual may be deemed to have acted under color of state law and be held accountable under *Section 1983.*

**7: Argument:** Plaintiffs are suing Defendant 10, Walmart Inc. in Florida for collecting biometrics in violation of the Florida Biometric Data Privacy Act (BIPA) by failing to obtain written consent, disclosing their data collection practices, and failing to secure the data.

**8: Fact:** Florida also has a data privacy law, the Florida Digital Bill of Rights (FDBR), which requires businesses, such as Defendant 10, Walmart Inc. to obtain explicit consent before processing sensitive data, including biometric data, and limits the collection, use, and retention of personal information.

**9: Fact:** Defendant 10, Walmart Inc. uses Artificial Intelligence (AI) technologies

and algorithms partnering with companies such as Everseen Limited and

Clearview AI, Inc. which is used by government and law enforcement

agencies/personnel.

**10 Fact:** Initially, Everseen developed technology in 2014 such as "Missed Scan

Detection Program" which was used by Defendant 10, Walmart Inc.

**11: Fact:** Walmart has since created and are in the process of perfecting its own

biometric database AI technologies. It must be noted that Everseen Limited

sued Walmart for mimicking "trade secrets and confidential information" which

recently settled in an Arkansas Court. Also, Clearview AI, Inc claims to have over

50 billion images in its database of illegally obtained information, claiming the

"largest in the world".

**12: Fact:** Cases in Support: In 2020, it was revealed that Walmart employees

had Clearview AI accounts and had performed searches. In 2022, a suit brought

by the ACLU against Clearview AI in Illinois means that Clearview AI can no

longer sell its software to private companies like Walmart. However, Defendant

10, Walmart Inc. allegedly stole by intellectual theft the same software from

these two giant data collection companies: Thereof, is currently applying the

same data collecting methods upon the general public as Plaintiffs, that the

Courts have ruled unconstitutional if used by a private company such as

Defendant 10, Walmart Inc. See: *Everseen Limited v. Walmart Inc. f/k/a Wal-*

*Mart Stores Inc.: U.S.* District Court for the Western District of Arkansas Case

Number 4:2021cv04009 . Nature of Suit: Defend Trade Secrets Act (of 2016).

U.S. District Judge Susan Hickey signed a request by the plaintiff to seal the

original complaint. Supporting documents also are sealed. Only a redacted form

of Everseen's complaint is available to the public.

**13: Fact:** Defendant 10, Walmart Inc. is a global and extremely powerful

company. History supports that powerful Companies as Defendant 10, Walmart

Inc. mock American's court systems with impunity. See a lawsuit, *Joann Davis v.*

*Walmart Inc., Case No. 1:24-CV-03373,* in the *U.S. District Court for the*

*Northern District of Illinois, Eastern Division*, was filed on April 25.  Another

lawsuit against the biometric surveillance system, though that filing was quietly

withdrawn in late 2022 without a settlement.

**14: Fact:** Defendant 10, Walmart Inc. Now openly states with impunity that their

new data collecting system, stolen from Everseen Limited  that was ruled

unconstitutional if applied by private businesses such as Defendant 10, Walmart

Inc. Employees make jokes referring to Walmart's surveillance accuracy using

Everseen Limited technologies as "Neverseen"; however, Walmart still uses the

system to falsely profile, charge, and accuse individuals of shoplifting. now

brags about Walmart's surveillance accuracy calling Everseen Limited

technologies "Neverseen". Such arrogance leaves one to ask: What and to what

68.

amount of monies will it take to stop Defendant 10, Walmart Inc. from collecting/retaining/selling biometrics without the public's permission?

**15: Fact:** Defendant 10, Walmart Inc. has in the past and currently using an illegal biometric data collecting methods/systems to collect biometrics from the public, as Plaintiffs, without their knowledge and/or consent: Thereof, have built their own profile for Plaintiffs and shared it with other private business and government entities, such as Defendant 2, St. Johns Sheriffs without Plaintiffs' consent nor a warrant from the government.

**16: Argument:** It is not required of Plaintiffs to show harm, the violation is sufficient to seek redress from the courts. Nevertheless, Plaintiffs have suffered harm physically, mentally, and financially due to Defendant 10, Walmart Inc.'s surveillance and date collection of their biometrics.

**17: Argument:** Plaintiffs argue that Defendant 10, Walmart Inc. has in the past and currently in violation of biometric data collecting of Florida law; Plaintiff have suffered harm due to a private entity's, Defendant 10, Walmart Inc.'s failure to comply with the Florida Biometric Information Privacy Act (FIBIPA). Defendant has and is currently collected, stored, used, and/or disclosed their biometric data identifiers without proper written consent and/or a valid legal exception. Thereof, Plaintiffs have suffered harm as a result.

WHEREFORE, Plaintiffs Jed Lineberry and Twila Smedley pray for

69.

judgment against Defendant 10, Walmart Inc. as follows:

1. Plaintiffs seek from Defendant 10, Walmart Inc. independently for Cause of Action VII: monetary judgment for compensatory, special, and punitive damages, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.S.C. § 1983* and prejudgment interest to be determined by a Jury.

2. For the appointment of a receiver or similar authority to ensure that Defendant 10, Walmart Inc. does not further engage in any data collecting/retaining/selling for biometrics without the consent of the Plaintiffs, nor the public and/or any individual entering into any of Defendant 10, Walmart Inc.' stores at any location. Consent is not referred to as a public sign as an individual enter into Defendant 10, Walmart Inc.'s stores that state Defendant 10, Walmart Inc. may collect data for biometrics. Consent means a conscience acknowledgment of the data biometrics being collected: Thereof, written consent.

3: Emotional Damages for Extreme and outrageous conduct: Defendant 10, Walmart Inc.'s behavior was so egregious that it shocks the conscience. Amount to be determined by a Jury.

4. Emotional Intent or Recklessness: Defendant 10, Walmart Inc. intended to cause distress or acted with reckless disregard for the likelihood of causing distress. Amount to be determined by a Jury.

70.

**5:** Severe Emotional Distress caused by Defendant 10, Walmart Inc: The emotional distress was significant and debilitating, causing Plaintiffs' physical, emotional, and financial harm. The amount to be determined by a Jury.

**6:** It will be argued to the Jury, that Defendant 10, Walmart Inc. illegally and out-of-control surveillance, data collection/retention/distribution (rent/trade/sell) of biometrics data began with public knowledge around the 1980s and has continued non-stop regardless of any court orders. In the 1990s, *60 Minutes* did a long story and exposed to the public about Defendant 10, Walmart Inc.'s illegal surveillance. Many times the courts have ruled judgment against Defendant 10, Walmart Inc. warned Walmart Inc. to stop their illegal surveillance and data collection/retention/distribution (rent/trade/sell) of Biometric data Information. However, Defendant 10, Walmart Inc. laughs at American's justice system and continues with their illegal surveillance, collection/retention/distribution (rent/trade/sell) of biometrics data without explicit consent. Which begs the question, how many billions of dollars in judgment will it take to stop Defendant 10, Walmart Inc.'s illegal surveillance and data collecting of biometrics of the public as Plaintiffs without their consent?

**7: Argument:** Walmart Inc.'s retail license be suspended for two months and placed on probation for 10 years. If violated, Defendant 10, Walmart Inc. lose its retail license for life.

71.

**8.** For such other and further relief as this Court and or jury deems just and equitable.

Note: Walmart Inc. must be held accountable and no amount of monies alone will stop a rogue giant retail store as Defendant 10, Walmart Inc. without serious action being taken against them,  such as suspension of their retail license.

**9.** INJUNCTIVE RELIEF TO PREVENT FUTURE VIOLATIONS:

 **a:** To prevent future violations, Defendant 10, Walmart Inc. be ORDERED to stop their illegal surveillance and data collecting of biometrics data without consent at once. Thereof, placed on a probational period for ten years. If violated, Walmart Inc. operational license be revoked for life. Thereof, any other demands as deemed just and equitable by the Court and/or Jury.

 **b.** An immediate change in official policy that states a **[I]egal** surveillance cannot be shared with any other business without explicit written consent, nor used for profiling of any American citizen, nor any surveillance shared with the government without a warrant.

**CAUSE OF ACTION VIII: FIRST, THIRD, FORTH, FIFTH, EIGHT and NINTH AMENDMENT VIOLATIONS; RIGHT TO PRIVACY; COLLECTION/RETENTION/DISTRIBUTION (RENT/TRADE/SELL) OF BIOMETRIC INFORMATION; MEDICAL MALPRACTICE; LACK OF INFORMED CONSENT; & UNETHICAL HUMAN EXPERIMENTATION BY DEFENDANT 2, ST. JOHNS COUNTY SHERIFF'S DEPARTMENT (ONLY): <u>Canton Liability</u>**

**Notice**: Plaintiffs reallege and incorporate by reference all paragraphs above. Plaintiffs have a claim under *Title 42 U.S.C. Section 1983* for the following federal constitutional and/or statutory civil rights violations.

**1:** All conditions precedent to file this Complaint have been performed or have occurred given rise to this Complaint.

**2: Fact:** In Florida, collecting biometrics like fingerprints, while not inherently a Fourth Amendment violation, must be done within the bounds of reasonable searches and seizures, meaning it requires a lawful basis, such as a warrant or probable cause. Black's Law Dictionary describes "biometrics" as the measurement and statistical analysis of people's unique physical and behavioral characteristics, used for identification and verification. For example, but not limited to data such as fingerprints, facial scans, iris scans, voice recognition, demographics, and even behavioral patterns like typing rhythm or gait.

**3: Fact:** The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.

**4: Fact:** This means that law enforcement needs a warrant, based on probable cause, to conduct a search or seize a person Biometrics data. Biometric data, like fingerprints or facial recognition data,

73.

is considered a form of personal information, and collecting without permission it can be viewed as a search and seizure.

**5: Argument:** Plaintiffs are suing Defendant 2, St. Johns County Sheriff's Department in Florida for collecting biometrics data in violation of the Florida Biometric Data Privacy Act (BIPA) by failing to obtain written consent, disclosing their data collection practices, and failing to secure the data.

**6: Fact:** Florida also has a data privacy law, the Florida Digital Bill of Rights (FDBR), which requires explicit consent before processing sensitive data, including biometric data, and limits the collection, use, and retention of personal information.

**7: Argument:** Plaintiffs are suing Defendant 2, St. Johns County Sheriff's Department for Unethical Human Experimentation, exposure to harmful radiation.

**8: Argument:** Defendant 2, St. Johns County Sheriff's Department is conducting a morally objectionable and highly health hazardous, unethical medical experiments without informed consent in violation of The Nuremberg Code. The experiments involved exposing Plaintiffs as all inmates to harmful radioactive chemicals, such as radiation and toxicity. Plaintiffs while handcuffed were forced victims of the experiments. During booking process of Defendant 2, St. Johns County Sheriff's Department and while in handcuffs, Plaintiffs were forced to

74.

enter into a machine, later identified as *Tek84*, that took full body scans, measurements, and extensive biometrics from Plaintiffs' persons. Plaintiffs asked if the *Tek84* machine takes biometric data and if their personal information and biometrics would be disclosed or given to third-party databases. Plaintiff also asked if the machine exposed them to any radiation. Defendant 2, The St. Johns County Sheriff's Department Officer operating and taking the scans stated, "No", further stating that the machine, later identified as *Tek84,* only captured pictures as a camera. Plaintiffs have ascertain that the *Tek84* machine did not just take the usual body measurements of height and weight. The machine is extremely invasive and indeed a medical procedure. The *Tek84* has the full capability of taking X-ray. Even being near the machine, itself, is a health hazard. The machine has a storage capacity of 1 million photo-database where it matches an individual's MRI type body scan as other unique identification features including an individual's facial recognition technology to create a unique profile.

**9: Argument:** This profile in connection with St. Johns County Jail Inmate Number, as the Plaintiffs are widely shared with other third party platforms.

**10: Argument:** Defendant 2, St. Johns County Sheriff's Department did not disclose any information concerning the radiation exposure of the *Tek84*, did not disclose any risks involved with using the *Tek84* machine, or being near the

machine, did not disclose it utilizes a thermal camera/scanner, did not disclose that it is indeed an X-ray that emits large amounts of radiation, up to a lethal amount with the untrained employee on duty to greater or lesson the MRI type images radiation amounts, nor disclose any of its capabilities or inform Plaintiffs that it collects and retains biometrics data.

**11: Argument:** The *Tek84* has Integr8 facial recognition and G8 visitor management technologies. Defendant 2, St. Johns County Sheriff's Department *Tek84* machine [d]id emitted hazardous radiation upon Plaintiffs and collected Plaintiffs' biometric with personal identifiers without explicit written consent. Furthermore, broadcasting Plaintiffs' inmate numbers without a conviction in associated with this unique identifier.

**12: Fact:** Again, prior to any medical experimentation, Plaintiffs requested to speak with a lawyer prior to the exposure to the *Tek84* machine*,* but were denied.

**13: Fact:** Plaintiff Smedley was place in a holding cell and denied her 8th Amendment right to bail as punishment until she complied.

**14: Fact:** It must be further noted that the radiation amount output even in the lowest dose has been banned within the medical communities, because of its large amount of exposure to radiation which is now used by Defendant 2, St. Johns County Sheriff's Department as an experiment on inmates.

**15: Fact:** The *Tek84* machine is an impermissible use of Plaintiffs' biometrics data collecting a database without explicit permission and/or creates a black list, characterizing Plaintiffs with inaccuracies and biases. Even as far as labeling Plaintiffs as a criminal without a judgment in court of law, further finding individuals to target.

**16: Fact:** Defendant 10, Walmart Inc. works closely with Defendant 2, St. Johns County Sheriff's Department and uses the databases to target individuals as Plaintiffs, performing unauthorized searches without permissible purposes.

**17: Fact:** Section 468.302(1), F.S., states that no person shall use ionizing radiation on a human unless that person is a licensed practitioner or a radiologist technology certificate holder in Florida.

**18: Fact:** St. Johns County Sheriff's Department employee that took Plaintiffs' biometrics is not a practitioner or a radiologist licensed in the State of Florida for the use of their *Tek84* machine: Thereof, did not protect Plaintiffs nor the public from hazardous and unnecessary radiation exposure.

**19: Argument:** Plaintiffs have an Eight Amendment Right to refuse access to radiation. Plaintiffs were denied their right and were not provided informed consent, which means Plaintiffs must be be given sufficient information to make an informed decision about the treatment and/or exposure to radiation, including its purpose, benefits, risks, and alternatives. Plaintiffs were not informed.

**20: Argument:** In Florida, a healthcare provider can face legal consequences, including a medical malpractice lawsuit, if they fail to obtain proper informed consent before performing a procedure or treatment involving exposure to radiation, potentially causing harm to the patient.

**21: Fact:** Florida Administrative Code R. 33-401.105 outlines the process for inmates refusing health care services, emphasizing that inmates, as Plaintiffs have the right to decline medical procedures or treatments such as being exposed to the *Tek84* harmful radiation.

**22: Argument:** The use of the *Tek84* human experimentation and subjecting radiation on inmates as Plaintiffs that have not been convicted of any crime is in violation of Plaintiffs First, Third, Fourth, Fifth, Sixth, Eighth, and Ninth constitutional rights.

**23: Argument:** Defendant 2, St Johns County Sheriff's Department claims to have "watched" a video and receives payments/incentives from the *Tek84* Inc. company for every scan they perform over five and shares and sales the public's biometrics data and scans taken by the *Tek84* Inc. to other private companies. This is the extent of any employee of Defendant 2, St. Johns County Sheriff's Department training for operation and adjusting the correct amount of radiation subjected to Plaintiffs and all inmates prior to the exposure to the *Tek84* machine.

**24: Argument:** Plaintiffs as all inmates are not only having their biometrics data taken without their consent, but being exposed to harmful radiation without consent by untrained personnel. Thereof performing an on site human testing procedure without explicit written consent, which is a crime, a violation of Plaintiffs' constitutional right, unethical and shocks the conscious.

**25: Argument:** It is alleged that Defendant 2, St. Johns County Sheriff's Department profits monies from Plaintiffs' as all inmates from collecting Biometric data Information (collection/retention/distribution (rent/trade/sell). Thereof, sells the collected data to outside third-party private companies such as Defendant 10, Walmart Inc.

**26: Argument:** It must be noted that all Defendants present and/or employees of Defendant 2, St. Johns County Sheriff's Department, including St. Johns County Jail booking staff refused to intervene or to stop the Plaintiffs from being subjected to harmful radiation.

**27: Fact:** Defendant 2, St Johns County Sheriff's Department did collect, capture, purchase, receive and/or obtain Plaintiffs' biometric data information without obtaining any formal notice nor a written consent. Thereafter, sell same to outside third-party private companies.

79.

**28: Fact:** Defendant 2, St Johns County Sheriff's Department did expose Plaintiffs to a medical procedure. Thereof, both directly and indirectly exposing Plaintiffs to harmful doses of radiation without obtaining any formal notice nor a written consent.

**30: Fact:** Plaintiffs within a few hour of exposure to Defendant 2, St. Johns County Sheriff's Department's *Tek84* machine suffered symptoms associated with the exposure to radiation.

**31: Fact:** Plaintiff Jed Lineberry has within an hour of exposure suffered and is currently now suffering from the exposure to Defendant 2, St. Johns County Sheriff's Department *Tek84* machine's output of radiation. The condition Plaintiff Jed Lineberry has been diagnosed with a potentially detrimental, long-lasting, and potentially incurable condition. A full and complete diagnostic will be provided to the court in a sealed supplement once the case is accepted by this Court. In addition, the cost of treatment, being exposed to the *Tek84* machine's radiation has caused a long-lasting condition upon Plaintiff Jed Lineberry that is currently costing around $20,000.00 monthly for ongoing treatment.

**32: Fact:** It must be further noted that Plaintiffs were one of the first inmates to be forced to be exposed to Defendant 2, St. Johns County Sheriff's Department's experimental *Tek84* machine's beams of radiation.

**33: Argument:** Plaintiff will show that Defendant 2, St. Johns County Sheriff's

Department *Tek84* machine has the potential to expose inmates, as Plaintiffs, to potentially lethal doses of radiation. Further arguing that Defendant 2, St. Johns County Sheriff's Department did purposely expose Plaintiffs to a potentially lethal dose of the *Tek84* machine's radiation causing potential chronic medical conditions, meaning long-lasting health issues that require ongoing medical attention and can limit daily activities for life. In other words, the Defendant 2, St. Johns County Sheriff's Department is the gatekeeper of who will live and who will die, passing each subjugated inmate through their *Tek84* machine's doses of radiation (a medical procedure) at their own discretion. Defendant 2, St. Johns County Sheriff's Department is liable.

WHEREFORE, Plaintiffs Jed Lineberry and Twila Smedley pray for judgment against Defendant 2, St Johns County Sheriff's Department. as follows:

1. Plaintiffs seek from Defendant 2, St Johns County Sheriff's Department independently for Cause of Action VIII: monetary judgment for compensatory, special, and punitive damages, and punitive damages together with costs and disbursements, including reasonable attorneys' fees, under *42 U.S.C. § 1988, U.S.C. § 1983* and prejudgment interest to be determined by a Jury.

2. For the appointment of a receiver or similar authority to ensure that Defendant 2, St Johns County Sheriff's Department does not further engage in any data

biometrics data collecting/retaining/selling of biometrics data, or exposing any inmate to their *Tek84* radiation machine without inform consent of the Plaintiffs and/or any inmate. The Tek84 machine is a public health safety hazard. Consent is not referred to as a public sign as you enter into Defendant 2, St Johns County Sheriff's Department that state Defendant 2, St Johns County Sheriff's Department may collect data for biometrics and expose inmates to harmful radiation entering into the *Tek84* machine and/or radioactive materials. Consent means a conscience acknowledgment of the data biometrics being collected: Thereof, written consent.

**3**: Emotional Damages for Extreme and outrageous conduct: Defendant 2, St Johns County Sheriff's Department's behavior was so egregious that it shocks the conscience. Amount to be determined by a Jury.

**4.** Emotional Intent or Recklessness: Defendant 2, St Johns County Sheriff's Department intended to cause distress or acted with reckless disregard for the likelihood of causing distress. Amount to be determined by a Jury.

**5**: Severe Emotional Distress caused by Defendant 2, St Johns County Sheriff's Department: The emotional distress was significant and debilitating, causing Plaintiffs' physical, emotional, and financial harm. The amount to be determined by a Jury.

**6.** For such other and further relief as this Court and or jury deems just and

equitable.

Jed Lineberry: _____ 04/14/2025

Twila Smedley: _____ 04/14/2025

## PATTERNS OF ABUSE AND EXCESSIVE FORCE

There is evidence of a history of widespread prior abuse. There have been multiple lawsuits against the Defendant 1, City of St. Augustine, Florida Defendant 2, St. Johns County Sheriff's Department and Defendant 10, Walmart Inc., including lawsuits involving abuse, sexual abuse, false arrest, death of a deputy and excessive force. The City of St. Augustine, Florida, St. Johns County Sheriff's Departmart and Walmart Inc. frequently fail to terminate or discipline officers/employees who demonstrate patterns of misconduct. In addition, fails to assure that the employees hired are screened properly. Moreover, receive reasonable training and supervision.

**1: Case 3:24-cv-00195-HLA-PDB :** *Vergilio Aguilar-Mendez*: A Guatemalan immigrant charged with aggravated manslaughter of a St. Johns County deputy. Aguilar-Mendez's attorneys filed a federal civil rights lawsuit against the officer's estate, another lieutenant, and the county. The lawsuit claimed violations of the Americans with Disabilities Act and Rehabilitation Act.

**2:** *3:20-cv-939-MMH-PDB 09-17-2021: KASIM HOWARD, Plaintiff, v. ST. JOHNS COUNTY SHERIFF*, A governmental entity established by and through the Constitution of the State of Florida, et al., Defendants. This case involves excessive force and battery.

**3: Case No. 3:09–cv–1208–J–32MCR. :** A federal judge has ruled a secret recording between a suspect and his attorney at the St. Johns County Sheriff's Office violated his Fourth Amendment right against unreasonable search and

83.

seizure and a federal wiretap law.

**4: *CASE*: 3:23-cv-1339 *PAUL* MICHAEL *VIOLLIS JR* :** ST. JOHNS COUNTY,
Fla. – A man, Paul Viollis Jr., is suing the St. John's County Sheriff's Office, St.
Augustine Beach Police, and an officer after he said they violated his civil rights
and the officer used excessive force, leaving him with physical and emotional
damages.

**5: Gray v. Saint Johns County Sheriff's Office, 3:16-cv-00573, (M.D. Fla.) :**
Jeff Gray is suing the St. Johns County Sheriff's Office. In the suit, filed on May
10 in the U.S. District Court for the Middle District of Florida by attorney Andrew
Bonderud, Gray alleges that four deputies, on 10 occasions, violated the federal
Drivers Privacy Protection Act.

**6: *Matthew Friedson v. Sheriff David Shoar, et al, No. 20-14803 (11th Cir.
2021)*.** On February 27, 2015, Deputy Ryan Wallace of the St. Johns County
Sheriff's Office stopped a vehicle driven by Matthew Friedson, who is deaf, for a
traffic violation. After Friedson drove away during the traffic stop, Deputy
Wallace followed him and conducted a second stop. During that second stop,
Deputy Wallace handcuffed Friedson and seated him in the back of the patrol
vehicle, and then released him and issued a citation for the traffic violation.
Friedson sued Deputy Wallace, bringing false arrest claims under 42 U.S.C. §
1983 and state common law. He also brought claims against Sheriff David
Shoar, claiming that Sheriff Shoar is liable for the false arrest under state law
and for violations of the Americans with Disabilities Act and the Rehabilitation
Act.

**7: Source: https://www.oregonlive.com/business/2024/05/black-portlander-
files-475k-lawsuit-against-walmart-for-accusing-him-of-stealing-vacuum-
he-bought.html : Portlander files $475k lawsuit against Walmart for
accusing him of stealing vacuum he bought :** May. 15, 2024, : A Portland
man who says he was berated by Walmart store security in Tigard and falsely
labeled a vacuum thief filed a $475,000 lawsuit after the chain admitted a few
months later that he actually did buy the vacuum.

**8: Case No.: 2020-CA-387;** On 03/25/2020 PEREZ, JULIA filed a Personal
Injury - Motor Vehicle lawsuit against ROBERT A HARDWICK, ST JOHNS
COUNTY SHERIFF'S OFFICE. This case was filed in St. Johns County -
Seventh Judicial Circuit Court, St. Johns County Circuit Court located in St.
Johns, Florida. The Judge overseeing this case is MALTZ, HOWARD M. St.

Johns County, Florida, styled Julia 89 Perez vs. Robert A. Hardwick, in his capacity as Sheriff of St. 90 Johns County, **Case No.: 2020-CA-387**; the parties agreed 91 to a settlement amount of $6.5 million before trial, and 92 WHEREAS, Ms.

**9: Source:https://www.consumerfinance.gov/enforcement/actions/walmart-inc-and-branch-messenger-inc/**
WASHINGTON, D.C. – Today, the Consumer Financial Protection Bureau (CFPB) sued Walmart and Branch Messenger for forcing delivery drivers to use costly deposit accounts to get paid and for deceiving workers.

**10: Source: https://www.millerandzois.com/practice-areas/maryland-premises-liability/wal-mart-injury-settlements/**
"Walmart is sued nearly 20 times daily, close to 5,000 times each year". Walmart Store Settlements and Lawsuits: About personal injury lawsuits against Walmart. "...this retail giant desperately wants to make plaintiffs' lawyers feel like they have been in a fight when the sue Walmart or even bring a claim against it. Getting documents from them in litigation is always World War III. Judges around the country have sanctioned Walmart for not producing documents and frustrating legitimate fact-finding by the plaintiffs' attorneys."

**11: Source: https://abcnews.go.com/Business/video/walmart-agrees-pay-45m-settle-class-action-lawsuit-108998024 : April 8, 2024, Walmart agrees to pay $45M to settle class action lawsuit.** The retail giant is accused of overcharging customers for some groceries, including weighted meat, seafood, and bagged citrus products. ABC News' Alexis Christoforous reports. ABC News' Alexis Christoforous reports on the class-action lawsuit against Walmart, which alleges the retail chain overcharged some customers for certain groceries bought in-store.

**12: Source: https://www.cohenmilstein.com/case-study/wal-mart/ : Evidence of Decades of Sex Discrimination at Wal-Mart Stores**: The History of **Dukes v. Wal-Mart:** Litigation against Walmart Stores has been ongoing since June 2001, in an effort dedicated to ensuring that millions of women who have worked for Walmart over the years receive equal pay and an equal chance at promotion.

**13:** List of other lawsuits against Walmart Inc.: McIntosh v. Wal-Mart Stores Texas LLC. Filed: February 14, 2025 as 5:2025cv00173. ...

- Valdovinos v. Walmart Inc. ...
- Maldonado v. Walmart Stores Texas LLC. ...
- Servin v. Walmart Stores Texas, LLC. ...
- ESPINOZA ESCOTO v. WALMART STORES, INC. ...
- Neff v. Walmart Inc et al. ...
- Poppe v. Walmart Super center. ...
- Sistrunk v. Walmart Stores East, LP.

**14: Source: https://www.newsnationnow.com/us-news/northeast/cicero-new-york-walmart-assault/ : Man charged with sexual abuse after incident in New York Walmart bathroom :** A woman who works at the Walmart Super center in Cicero was sexually assaulted by a man in a store bathroom, police said. Police responded to the attack at the store at 8064 Brewerton Road around 1:50 p.m. on Saturday, according to Cicero Police Chief Steve Rotunno. The Walmart employee proceeded into a handicapped stall which is when the suspect walked in behind her, pushed her forward, and locked the stall door. "At this time the male proceeded to pull his penis out of the front zipper of his pants and began to signal to the female to keep quiet. The woman attempted to get out of the door but was not allowed to exit the bathroom stall," said Cicero Police.

**15: Source: https://www.mercurynews.com/2024/04/30/a-walmart-employee-allegedly-called-a-14-year-old-cute-and-got-her-number-hours-later-she-was-missing-from-her-east-bay-home/ : A Walmart employee allegedly called a 14-year-old 'cute' and got her number. Hours later she was missing from her East Bay home :** Reported By Nate Gartrell, Bay Area News Group, May 1, 2024 :  A Walmart employee allegedly called a 14-year-old 'cute' and got her number. Hours later she was missing from her East Bay home. A local resident has been arrested and charged with raping and sexually abusing a 14-year-old girl that police say he met through his job at a Walmart, court records show.

**16:** There have been multiple cases of people being falsely arrested by Walmart, including a customer who was detained and interrogated for hours. In some cases, people have sued Walmart for false arrest and discrimination.

**17: Source: https://www.wtsp.com/article/news/local/spring-hill-walmart-hernando-county-tony-nguyen/67-6dde5c89-3d03-4a7f-bdb7-39828a89ba04 :** After viral video, Hudson man sues Hernando County deputy, Walmart for false arrest

**18**: ***CASE NO. 1:23-cv-1488***: On July 31, 2023, Plaintiff filed her initial complaint against Walmart.1 (ECF No. 1). This action arises out of an incident on August 29, 2021, where Plaintiff was attempting to leave a Walmart store after completing a purchase but was stopped and detained by Walmart employees based on suspected shoplifting.

**19**: Source: **https://www.fox5atlanta.com/news/walmart-forsyth-county-surveillance-mistake-jail:Forsyth County father, son spend night in jail after Walmart mistakes them for crooks** : May 1, 2024 , Forsyth County father, son spend night in jail after Walmart mistakes them for crooks. Michael Kruse told FOX 5 he's probably been to Walmart hundreds of times, but he never would've imagined a trip to this one would land him and his teen son in jail, falsely accused of stealing bags of sand that a receipt showed they paid for.

**20: Source: https://www.news4jax.com/news/local/2024/11/27/black-jacksonville-couple-accused-of-stealing-childrens-clothing-claims-discrimination-in-lawsuit-against-walmart/ : Black Jacksonville couple falsely accused of stealing claims discrimination in lawsuit against Walmart** : A Black Jacksonville couple filed a lawsuit against Walmart on Wednesday after they said they were "profiled," "wrongly imprisoned," and "humiliated" when they were accused of stealing children's clothing at a Northside store in October. Comments: "@bspoon5041. 2 months ago. Last time a Walmart did this it cost them 4.2 million. You'd think they would know better."

**21: Source: https://www.wkrg.com/mobile-county/2-1-million-verdict-woman-who-sued-walmart-and-won-talks-to-wkrg-news-5/ : $2.1 million verdict: Woman who sued Walmart and won talks to WKRG News 5** : "imagine being arrested over a malfunctioning self-checkout scanner, especially when a Walmart employee was literally helping you! The mental anguish alone, Let's be real, we've all dealt with those finicky self-checkout machines. But this took it to a whole new level. Not surprised the jury sided with her. Sometimes it's not just about physical injuries, it's about standing up to big corporations when they steamroll over people's dignity."; 7,294,596 views Nov 30, 2021. $2.1 million verdict: Woman who sued Walmart and won talks to WKRG News 5. Comments: "Wow! Way to go Walmart, you turned a $48 incident into a $2 million payout!! Kudos to this lady!! I hope she receives her settlement promptly": @Lemonz1989. 2 years ago . "If that's the case, then every time a Walmart cashier accidentally overcharges someone, Walmart should be held

25

criminally liable for theft of property": @isthattrue1083. "2 years ago. So they committed perjury, lied to a court official, submitted a false police report, etc., so they need to be criminally investigated": @kryan1364. "2 years ago. I'm so glad she won the lawsuit. Everyone should be aware that this happened in case it happens to them": @manrivera40. 2 years ago (edited). "Imagine that she gets arrested for $48 worth of groceries and now Walmart has to pay back 2.1 million. People don't understand a simple mistake like arresting someone who was totally innocent in the first place can tarnish their reputation in many ways. Shame on u Walmart."

**22: To further support a pattern of abuse and disregard for statutory law**, Defendant 2, St. Johns Sheriffs Department denied Plaintiffs their right to access and view public records. The Departments' failure to properly train and supervise its employees has orchestrated to stop the general public from completing formal complaints. After the incident, Defendant 2 refused to disclose all information and reports concerning the incident given rise to this Complaint. Further, Plaintiffs while at Defendant 2, St. John County Sheriff's Department spoke with the custodian of records. Plaintiffs specifically asked for records verbally. Their request was denied. Plaintiffs were physically present, and requested to at least allow them to view and inspect the records. Plaintiffs were denied in violation of *Florida Statute 119.07(1)*:

> *"Every person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records."*

**24: Source: https://abcnews.go.com/WNT/video/Walmart-system-failure-caused-checkout-mispricing-110697005** : May 30, 2024, Walmart system failure caused self-checkout mis-pricing Walmart Inc. experienced a major technical issue in March, resulting in widespread mis-pricing at its self-checkout systems.

**25: Joann Davis v. Walmart Inc., Case No. 1:24-cv-03373**, **in the U.S. District Court for the Northern District of Illinois, Eastern Division,** was filed on April 25. Plaintiff Joann Davis says that she was required to use a fingerprint-scanning system to clock in and out of work as a Walmart employee, and that the company failed to obtain her consent for the collection of her biometric data, as required under BIPA.

**26: Case Number 1:24-cv-03373 in the U.S. District Court for the Northern**

**District of Illinois, Eastern Division :** The lawsuits claim that Walmart stores in Illinois have cameras and advanced video surveillance systems that collect customers' facial scans without their informed written consent. Specifically, the plaintiffs allege that Walmart uses Clearview AI software to match customers' facial scans against a database of facial scans. The plaintiffs contend that this practice violates BIPA, which requires written consent for the collection, storage, and use of biometric data. In 2021, Walmart reached a $10 million settlement with employees in a class action lawsuit related to biometric time clocks.

**26: In Support of a Pattern of Abuse,** St. Johns County Cases under Robert A. Hardwick's Leadership and County since January 5, 2021.

- **Case # 23000019CFMA** : Defendant is riding a bike in St. Johns County. Deputy Morne Heymans #11360 makes a Stop and gives a written warning. K9 Deputy Gruny is called to scene to perform search on her person without cause, written authorization, nor a warrant, resulting in Defendant's arrest. Stating, "Canine Deputy Gruny utilized his canine partner, Thor, to conduct a free air sniff of the bicycle and containers and defendant placed around it."

- **Case # 21001375CFMA:** Trooper S. Mills #4468 along with St. Johns County Sheriff Department assisting in the search, seizure, and arrest, states, "a now lawful search". Earlier during the stop, Trooper S. Mills states, "I observed a large amount of U.S. Currency with mixed denomination through the bag" while asking for Defendant's ID. Trooper S. Mills later adds Defendant's identification through his own personal search and seizure of Defendant's vehicle and wallet, stating, "I pulled out a black wallet with the ID..." continuing "...while searching through the bag". A wrecker service was called and "The vehicle was recovered by a rotational wrecker service, with a 5 day hold placed for the purposes of possible forfeiture(s)". Again, later in the report, Trooper S. Mills #4468 states, "a now lawful search".

- **Case #23000093CFMA:** Without a warrant or written authorization for a body cavity search, Two male Officers, perform a body cavity search after handcuffing a woman and after a St. Johns County Sheriff's Department Officer Brian Armenta #10751 describes, "While holding her left wrist, I grabbed her by the back of her neck and placed her on the ground"

89.

claiming a charge of "Resisting an Officer Without Violence". Officer Brian Armenta #10751, a male Officer stated, "I conducted a search of her person with Corporal Miller present" (another male Officer from St. Augustine Police Department Corporal Chris Miller #2902).

- **Case #23000595CFMA** : At least five St. Johns County Department Officers from Unit "SJSO\LENF\PATROL\BRAVO\SOUTH\SE" including Deputy Morne Heymans #11360, Deputy Matthew Pirollo #11588, Deputy Toubaili Abdulrahma #10945, and Supervising Sergeant Michael P. Milillo #10461 target two Defendants, stopping their vehicle after leaving Walmart parking lot at 2355 US-1, St. Augustine, FL 32086 . Walmart Inc. Loss Prevention Employee Csaba Toth who has no verifiable licensure personally shows up on-scene about half a mile away from Walmart Inc. to search and seize items, collaborating closely with St. Johns County Sheriff Department. Two Defendants were taken from their vehicle (with the expectation of privacy), items searched and seized without a warrant, leading to Defendants' arrest. Defendants' vehicle was towed by Deputy Matthew Pirollo #11588's demand. The final report has incomplete cut-and-paste generic details. The arresting Officer Toubaili #10945 attempts to describe a paid "receipt" as a stolen item to be retrieved as reasoning for his search and seizure, specifically of Defendant's purse. Stating, "The receipt is a size in which can be folded and be hidden in an area where a folded dollar bill could be possibly located." The Officer's statements are a further display of incompetence, lack of training, lack of supervision, and an example of a rogue Officer operating under color of law.

- **Case #23000595CFMA** : St. Johns County Department's Officer Toubaili Abdulrahma #10945 states in a report as probable cause and reasoning for his search and seizure: "to dispel the crime" ; Further stating, "When asked about the receipt..." Defendant "...advised it could possibly be in the grocery bags or in her purse located in the vehicle." "Due to the circumstance of skip scanning, a receipt was needed to be located in the vehicle in order to dispel the fact of the crime of petite theft", "Based on the factor of the crime and circumstances of dispelling the fact of the crime, the vehicle was searched to an extent where a receipt could possibly located" ;therefore, Officers searched the vehicle, seized items, and "stolen receipt", leading to an arrest of two individuals. Officer Toubaili Abdulrahma #10945 also states, "After my findings, | made contact with..." Defendant "...and advised her of her constitutional rights."
- As in Plaintiffs' Case, Defendant 3, Andrew D. Hitch states "I retrieved the

90.

stolen receipt!", showing a systemic failure in competence. To this day, no one has provided an explanation as to what is a "stolen receipt"?

- **Case #19001800CFMA** : Bryan Thomas Sweeney Jr. who was in his vehicle with the expectation of privacy when St. Johns County Sheriff's Department broke through the window of his vehicle, leading to a search, seizure, and his arrest. Sweeney was brutally assaulted with excessive force by St. Johns County Deputies including Nicholas Converso #K3754. Sweeney was booked into St. John's County Jail with a black eye, bleeding wounds, visibly beaten by Officers who claimed he had "minor" injuries". When viewing the incident report, Sweeney's booking picture is intentionally darkened to hide the extent of his injuries to the public. On January 14, 2020, News4Jax released a video showing the extent of his injuries and the unaltered Booking photo : Source: **https://www.youtube.com/watch?v=u16poVo6SUY** . Nicholas Converso #K3754 was retention-hired by St. Johns County Sheriff Department under Sheriff Robert A. Hardwick and continues to operate under color of law.


## Conclusion

Defendants, as described within Plaintiffs' Complaint, are the leading

cause of violence and loss of public trust in law enforcement agencies. Far too

many times, rogue officers such as Defendants will find a target, someone who

the rogue officer dislikes or someone who attempted to file a complaint against

an officer/department and/or a company as Defendant 10, Walmart Inc that they

receive favor and monies from in the large amounts. Thereof, retaliate with

collaboration of their powerful entities such as their employers and/or Walmart

Inc. to hide behind, protecting their misconduct. Too often, the abuse continues

until the rogue officers beat the citizen unconscious, or kills the citizen, or the

citizen fights back and harms the rogue officer. Either way, no one wins. It is

uncivilized behavior! Plaintiffs' Complaint is not an isolated event. Plaintiffs ask this Court, "How many individuals of the public could witness such abuse as alleged within this Complaint, such as Plaintiff's wife being beaten, strip searched and molested, as many other allegations/violations within this Complaint, then simply walk away without being enraged!" Further, "How many citizens of any community understand the complexities or have the resources to file a federal lawsuit to stop such abuse?" One may answer, "File a complaint"! However, as these type of Defendants, rogue officers in collaboration with their powerful employers respond with intimidation, stall tactics, running the helpless citizen's name through wants/warrant databases, giving misleading information, and ultimately laughing at the citizen's formal complaint. Thereof, the rogue officer(s) only continue with their misconduct and will not stop until the complaining individual is eliminated. Defendants, believed and described as rogue officers, can and have destroyed many reputations and families with bogus charges, by their reckless unchecked power. Thereof, Plaintiffs seek redress from this Federal Court and urge this Federal Court to allow this Case to move forward through the judicial process. Moreover, to not allow stall tactic by defense counsel that serves no purpose other than to stall this case (egg-sucking methods), cost this court valuable time and resources, and cost Plaintiffs unnecessary time and monies. Thereof, to be decided by a Jury

without unnecessary delay.

It must be noted Defendants' words do not support their actions. Within a Vision & Mission Statement, Defendant 1, The City of St. Augustine and Defendant 2, St. Johns County Sheriff's Departments' Sheriff states:

"To have a trusted team of professionals ensuring St. Johns County is the safest place in the nation for families to live, work, visit through collaboration, excellence, and leadership...Serve with Excellence".

As evidenced within this Complaint, the "trusted team" has **[f]ailed** their duty as peacemakers, Sheriff Robert A. Hardwick, has **[f]ailed,** City of St. Augustine has **[f]ailed** and the St. Johns' County Sheriff's Department has **[f]ailed.** Thereof, lost control of its officers, failed to uphold the public's trust, and failed to properly train employees on professionalism and competence. The deterioration of Quality and High Standards trickle down from the top of command. Sheriff Robert A. Hardwick has allowed St. Johns County Sheriff's Department and Employees such as Defendants 1, 2, 3, 4, 5, 6, 7, 8, and 9 to collaborate closely with unauthorized individuals such as Defendants 10, 11, and 12 to violate the public citizen's state and federal constitutional rights. Under Sheriff Hardwick's leadership, he has allowed his employees to threaten, to bring physical harm through excessive force, to sexually assault, to withhold/deny public records against Florida statutory law, collects/retains/rents/trades/sells Biometric

93.

Information/Data without consent, to allow his Officers to mute body camera mikes while on official duty, to display actions of intimidation, to harass, to allow his employees to refuse public complaints requesting investigative disciplinary or corrective actions, and to allow the St. Johns County Sheriff's Departments' employees to blatantly laugh and high-five while violating the public's constitutional rights. Overall, the City of St. Augustine, Florida, Sheriff Robert A. Hardwick, St. Johns County Sheriff's Department, and Officers have **FAILED** to "serve with excellence".

**For the Record:** Plaintiffs sent to each Defendant a true and correct copy of this Complaint (the Complaint has been amended before filing) prior to filing with the Federal Court, offering each a 10-day reprieve. Defendants took no action to settle this case prior to the filing of this Compliant with this Honorable Court. In addition, these Defendants have a horrific reputation for retaliation. Thereof, **BEWARE:** Plaintiffs formally put all Defendants on notice, that any attempt to retaliate will be brought to this Honorable Court's attention. Thereof, seeking contempt charges for witness retaliation and injunctions.

Jed Lineberry:                                                                04/14/2025

Address: Address: 4150 Belfort Road
          PO Box 550956
          Jacksonville, Florida 32216
Phone:   (501)-326-5095
Email:   jedlineberry@hotmail.com

94.

Twila Smedley: _____ 04/14/2025

Address: Address: 4150 Belfort Road
                PO Box 550956
                Jacksonville, Florida 32216

## CHANGE OF ADDRESS STATEMENT

      We, Plaintiffs Jed Lineberry and Twila Smedley, agree to provide the Clerk of Court's Office with any changes to their address where case-related papers may be served. We understand that our failure to keep a current address on file with the Clerk of Court's Office may result in the dismissal of our case.

Jed Lineberry: _____ 04/14/2025

Address: Address: 4150 Belfort Road
                PO Box 550956
                Jacksonville, Florida 32216
Phone:    (501)-326-5095
Email:     jedlineberry@hotmail.com

Twila Smedley: _____ 04/14/2025

Address: Address: 4150 Belfort Road
                PO Box 550956
                Jacksonville, Florida 32216
Phone:    (501)-326-5095
Email:     jedlineberry@hotmail.com

## Certification and Closing:

      Under Federal Rule of Civil Procedure 11, by signing below, Jed Lineberry

and Twila Smedley certify that this complaint (1) is not being presented for

improper purpose, such as to harass, cause unnecessary delay, or needlessly

95.

increase the cost of litigation; (2) is supported by existing law or by a non-

frivolous argument for extending, modifying, or reversing existing law; (3) the

factual contentions have evidentiary support or, if specifically so identified, will

likely have evidentiary support after a reasonable opportunity for further

investigation or discovery, and (4) the complaint otherwise complies with

requirement of Rules 11.

Jed Lineberry: _____ 04/14/2025
Address: Address: 4150 Belfort Road
        PO Box 550956
        Jacksonville, Florida 32216
Phone:   (501)-326-5095
Email:   jedlineberry@hotmail.com

Twila Smedley: _____ 04/14/2025
Address: Address: 4150 Belfort Road
        PO Box 550956
        Jacksonville, Florida 32216
Phone:   (501)-326-5095
Email:   jedlineberry@hotmail.com

**WHEREFORE PREMISES CONSIDERED:** Plaintiffs demand a jury trial,

and the full sum to be determined by a jury, all cost for litigation this case, and all

other relief Plaintiffs may be entitled to whether prayed for or not.

Respectfully submitted:

Jed Lineberry: _____ 04/14/2025

Address: Address: 4150 Belfort Road
        PO Box 550956
        Jacksonville, Florida 32216
Phone:   (501)-326-5095

96.

Email:    jedlineberry@hotmail.com

Twila Smedley: _____    04/14/2025

Address: Address: 4150 Belfort Road
                PO Box 550956
                Jacksonville, Florida 32216
Phone:    (501)-326-5095
Email:    jedlineberry@hotmail.com

## EXHIBIT A & B: AFFIDAVIT OF
## JED LINEBERRY and TWILA SMEDLEY

We, Jed Lineberry and Twila Smedley, declare that we are over the age of 18, of sound mind, and have direct knowledge of the information disclosed.

Within days after the arrest on 02/10/2024 by Defendant 2, St. Johns County Sheriff's Department and after the hazardous exposure of the *Tek84* machine utilized by Defendant 2, St. John's County Sheriff's Department for their *Tek84* Medical and Human Experimentation (against The *Nuremberg Code established in 1947*), specifically within two hours of the exposure, Jed Lineberry and Twila Smedley began displaying signs of radiation poisoning. At this time, Twila Smedley's medical condition is not diagnosed as life-threatening; however, the condition may require a lifetime of ongoing medical treatment. Jed Lineberry's condition has been diagnosed as life-threatening and will require a lifetime of ongoing medical treatment. Prior to being exposed to Defendant 2, St. Johns County Sheriff's Department's *Tek84* machine, neither Jed Lineberry nor Twila Smedley suffered from any condition that they are now being treated for after displaying symptoms of **radiation poisoning** by the *Tek84* used for medical and human experimentation. Jed Lineberry states that Plaintiffs have contacted personally Defendant 2, St. Johns County Sheriff's Department thereof, requesting a copy of any medical files (including pre-procedure and post-procedure), imaging/personal files, and Biometric Information/Data and other Sensitive Personal Data regarding Plaintiff's case and persons. All attempts have been met with some form of threat, hostility, or denial. It must be noted that Defendant 2, St. Johns County Sheriff's Department has a pattern of widespread abuse.

Jed Lineberry: _____    04/14/2025

97.

Address: Address: 4150 Belfort Road
        PO Box 550956
        Jacksonville, Florida 32216
Phone:    (501)-326-5095
Email:    jedlineberry@hotmail.com

Twila Smedley: _____    04/14/2025

Address: Address: 4150 Belfort Road
        PO Box 550956
        Jacksonville, Florida 32216

98.